USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 05/18/2018

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
:
JOHN SEALOCK, on behalf of himself, individually, :
and on behalf of all others similarly situated, :
: 17-CV-5857 (JMF)
Plaintiff, :
: MEMORANDUM OPINION
-v- : AND ORDER
:
COVANCE, INC., :
:
Defendant. :
:
----------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

Plaintiff John Sealock brings this putative collective and class action against Covance, Inc. ("Covance") for violations of overtime provisions of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207(a), and New York Labor Law ("NYLL"), NYLL § 160, as well as the wage statement and wage notice provisions of NYLL, *see* NYLL §§ 195(1), 195(3). (Docket No. 11 ("Am. Compl."), at ¶ 1). Covance, a New Jersey corporation, is a global enterprise that provides drug development services, including laboratory testing and clinical trial management, to pharmaceutical and biotechnology companies. (*Id.* ¶¶ 10, 27). Sealock worked for Covance as a clinical research associate ("CRA") for nearly a year, from July 28, 2016 through May 17, 2017, largely from his home in the Bronx, New York. (*Id.* ¶ 2, 28). Sealock alleges, among other things, that Covance "intentionally misclassified" him and other CRAs as exempt from the FLSA and NYLL, leading the company to "willfully fail[] to pay [them] the wages lawfully due" to them under the statutes. (*Id.* ¶ 2). Now pending are two motions: a motion by Covance to strike the class action allegations in Sealock's Amended Complaint (Docket No. 23); and a

cross-motion by Sealock for conditional certification of a collective action under FLSA as well as approval of collective action notices and an opt-in form. (Docket No. 46).

Covance's motion to strike can be swiftly rejected. As this Court has held, "a motion to strike class claims is considered premature if the issues raised are the same ones that would be decided in connection with determining the appropriateness of class certification under Rules 23(a) and 23(b)" of the Federal Rules of Civil Procedure. *Kassman v. KPMG LLP*, 925 F. Supp. 2d 453, 464 (S.D.N.Y. 2013) (internal quotation marks omitted); *see also Chen-Oster v. Goldman, Sachs & Co.*, 877 F. Supp. 2d 113, 117 (S.D.N.Y. 2012). That is the case here. Most, if not all, of Covance's arguments concern whether Sealock can satisfy the requirements of Rule 23(a). (*See* Docket No. 24 ("Def.'s Mem."), at 6-9; Docket No. 50 at 2-3; Docket No. 54 ("Def.'s Opp'n"), at 5-9). Those arguments, however are "exactly the sort[s] of issue[s] that would be litigated and decided in the context of a motion for class certification." *Chen-Oster*, 877 F. Supp. 2d at 117. Covance also contends that Sealock proposes an impermissible "fail-safe class." (Def.'s Mem. 10-11). But putting aside whether that argument also concerns the appropriateness of class certification under Rule 23, *see, e.g.*, *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, No. 11-CV-5450 (NRB), 2018 WL 1229761, at *63 (S.D.N.Y. Feb. 28, 2018) (noting that some courts have held that "fail-safe classes create manageability problems bearing on superiority under Rule 23(b)(3)"), it too is premature. *See, e.g.*, *Owens v. Starion Energy, Inc.*, No. 3:16-CV-1912 (VAB), 2017 WL 2838075, at *9 (D. Conn. June 30, 2017) ("[C]oncerns about the potential 'fail-safe' nature of the proposed class are best resolved at the class certification stage, not through a motion to strike."); *see also, e.g.*, *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 825 (7th Cir. 2012) ("Defining a class so as to avoid . . . the fail-safe problem is more of an art than a science. [The] problem can and often

2

should be solved by refining the class definition rather than by flatly denying class certification on that basis.").[1] Accordingly, Covance's motion is DENIED.

By contrast, in his motion for preliminary certification of a collective action, Sealock carries his "low" burden to make a "modest factual showing" that he and "potential opt-in plaintiffs together were victims of a common policy or plan that violated the law." *Myers v. Hertz Corp.*, 624 F.3d 537, 555 (2d Cir. 2010) (internal quotation marks omitted). In particular, through declarations from himself and other CRAs among other evidence (*see* Docket Nos. 34-40, 49), Sealock offers sufficient general proof that members of the putative collective were victims of a common policy to wrongfully exempt them from the FLSA and, thus, to not pay them overtime wages. *See, e.g.*, *Lynch v. United Servs. Auto. Ass'n*, 491 F. Supp. 2d 357, 370 (S.D.N.Y. 2007) ("Courts typically authorize dissemination of Section 216(b) notice upon a simple showing that other employees may also have been subjected to the employers' practice of 'misclassifying.'"); *Patton v. Thomson Corp.*, 364 F. Supp. 2d 263, 267 (E.D.N.Y. 2005) (finding the plaintiff met "the modest factual showing needed" by alleging, *inter alia*, that she worked over forty hours per week without receiving overtime compensation, that she was "improperly classified . . . as exempt," and that putative collective members had "the same job duties and assignments and that they are paid in the same manner"); *see also, e.g.*, *Amador v. Morgan Stanley & Co. LLC*, No. 11-CV-4326 (RJS), 2013 WL 494020, at *2 (S.D.N.Y. Feb. 7, 2013) (noting that a plaintiff may rely "on [his] own pleadings, affidavits, [and] declarations" to support a motion for collective action certification (internal quotation marks omitted)).

---

[1] Covance asserts as well that "[c]lass discovery would be inappropriate here" because "the nature of Plaintiff's work and that of the putative class members would invariably require scrutiny into highly sensitive pharmaceutical testing data." (Def.'s Mem. 3). That assertion seems overblown and can presumably be addressed through an appropriate protective order. In any event, it is not a basis to strike the class claims at the outset.

Covance's arguments to the contrary — most notably, its argument that CRAs are indeed lawfully exempt from the FLSA (*see* Def.'s Mem. 11-13; Def.'s Opp'n 10-12) — not only go to the merits, which are beyond the scope of the present motion, *see, e.g.*, *Lynch*, 491 F. Supp. 2d at 367-68 (S.D.N.Y. 2007) (noting that, on a motion for preliminary certification of collective action, the court does not resolve factual disputes, decide ultimate issues on the merits, or make credibility determinations), but also serve to confirm that there are common issues of fact and law that render this case appropriate for conditional certification.

Accordingly, Sealock's motion for conditional certification of a collective action consisting of "[c]urrent and former clinical research associates, or those working in a similar role, who during the applicable FLSA limitations period, performed any work for Defendant, and who consent to file a claim to recover damages for overtime compensation that is legally due to them," (Am. Compl. ¶ 12), is GRANTED. Further, Sealock is granted leave to send notice in the forms he has proposed (Docket No. 48 ("Maguire Decl."), Exs. B, E; *see* Docket No. 47 ("Pl.'s Mem."), at 25-28) to putative members of the collective in New York, Florida, North Carolina, Tennessee, and Washington, D.C.[2] Within two weeks of this Memorandum Opinion and Order, Covance shall produce a computer-readable data file containing all potential collective-action members' names, last known mailing addresses, last known home and mobile telephone numbers, last known e-mail addresses, work locations, and dates of employment. Covance shall

---

[2] In its memorandum of law opposing Sealock's cross-motion, Covance requests "that in the event that conditional certification of a collective is granted, any decisions concerning notice (contents, form, and manner/frequency of delivery) be deferred." (*See* Def.'s Opp'n 19 n.8). That request is denied. Covance elected not to address Sealock's proposals regarding notice in its opposition papers and thus has waived any possible complaint. Moreover, Sealock's proposed notice is consistent with notices that this Court has previously approved. *See, e.g.*, *Dey v. Saifi*, 17-CV-2049 (JMF), Docket No. 30 (S.D.N.Y. Sept. 1, 2017). Accordingly, the Court sees no reason to delay mailing of notices further.

not, in the first instance, produce any Social Security numbers.  If a notice is returned as undeliverable, Covance shall provide the Social Security number of that individual to Sealock's counsel.  Any Social Security numbers so produced will be maintained by Sealock's counsel alone and used for the sole purpose of performing a skip-trace to identify a new mailing address for notices returned as undeliverable.  All copies of Social Security numbers, including any electronic file or other document containing the numbers, will be destroyed once the skip-trace analysis is completed.  Within fourteen days following the close of the opt-in period, Sealock's counsel will certify in writing to the Court that the terms of this Order have been adhered to and that the destruction of the data is complete.  The Court finds that these procedures are sufficient to safeguard the privacy information of potential plaintiffs.  *See, e.g.*, *Shajan v. Barolo, Ltd.*, No. 10-CV-1385 (CM), 2010 WL 2218095, at *1 (S.D.N.Y. June 2, 2010).  Finally, within one week of receiving that information from Covance, Sealock shall mail the notices.

The parties shall appear for a conference with the Court on **May 31, 2018,** at **3:45 p.m.**, to set a schedule for the litigation.  **No later than the Thursday before that conference**, the parties shall submit a joint letter listing any issues that should be discussed at the conference and attaching, as an exhibit, a proposed Civil Case Management Plan and Scheduling Order (using this Court's form, which is available at http://nysd.uscourts.gov/judge/Furman).

The Clerk of Court is directed to terminate Docket Nos. 23 and 46.

SO ORDERED.

Date: May 18, 2018
New York, New York

_____
JESSE M. FURMAN
United States District Judge

5