# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **JOHN SEALOCK, on behalf of himself, individually, and on behalf of all others similarly-situated,** | |
| **Plaintiff,** | |
| **-against-** | **Case No.: 17-cv-5857 (JMF)** |
| **COVANCE, INC.,** | |
| **Defendant.** | |

### CLASS ACTON AND COLLECTIVE ACTION SETTLEMENT AGREEMENT

This Settlement Agreement, including all exhibits attached hereto (collectively, the "Agreement"), is entered into by and between Plaintiff JOHN SEALOCK (the "Named Plaintiff"), together with the class of individuals that he seeks to represent, which consists of all Clinical Research Associates ("CRA") who were employed by COVANCE INC. ("Covance") in New York at any time between August 3, 2011 and the present, all CRAs who opted into this action under the Fair Labor Standards Act and who are members of the conditionally certified collective, and Covance.

### RECITALS AND BACKGROUND

WHEREAS, the Named Plaintiff filed a putative class and collective action Complaint in the United States District Court for the Southern District of New York (the "Court") on August 3, 2017, captioned *John Sealock v. Covance, Inc.*, Case No.: 17-cv-5857 ("the Lawsuit");

WHEREAS, the Complaint asserted class claims under the New York Labor Law, §§ 160, 195(1), 195(3) ("NYLL") and collective claims under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA") alleging, *inter alia*, that Covance failed to pay overtime wages under the NYLL and FLSA, that Covance failed to provide wage statements and furnish wage notices at hire pursuant to the NYLL, and sought recovery of unpaid wages, liquidated damages, statutory damages, pre-judgment interest, and attorneys' fees and costs, as well as injunctive and declaratory relief;

WHEREAS, Covance has denied and continues to deny all of the allegations made by the Named Plaintiff in the Complaint, and denies any and all liability and damages to anyone with respect to the alleged facts or causes of action asserted in the Lawsuit;

WHEREAS, in order to facilitate discussions of the possible settlement of the Lawsuit, Covance provided to counsel for the Named Plaintiff ("Class Counsel") voluminous

business and payroll records relating to the hours worked by and amounts paid to the Named Plaintiff and putative class and collective action members during their employment with Covance;

WHEREAS, on the basis of the aforementioned business and payroll records, and its analysis thereof, Class Counsel is satisfied that they have a sufficient basis to properly value the claims as alleged in the Complaint;

WHEREAS, the Parties participated in a private mediation before Judge Howard Weiner, (Ret.) on October 29, 2018, and subsequently participated in a second private mediation before mediator Martin Scheinman on May 31, 2019, during which a settlement was reached;

WHEREAS, without admitting or conceding any liability or damages whatsoever and without admitting that wages, overtime and/or other amounts were improperly withheld from any employees, Covance has agreed to settle the Lawsuit on the terms and conditions set forth in this Agreement, to avoid the burden, expense, and uncertainty of continuing the Lawsuit;

WHEREAS, Class Counsel has analyzed and evaluated the merits of the claims made against Covance in the Lawsuit, and the impact of this Agreement on the Named Plaintiff, members of the collective, and putative class members, and based upon Class Counsel's analysis and evaluation of a number of factors, and recognizing the substantial risks of continued litigation, including the possibility that the Lawsuit, if not settled now, might not result in any recovery whatsoever, or might result in a recovery that is less favorable and that would not occur for several years, Class Counsel is satisfied that the terms and conditions of this Agreement are fair, reasonable and adequate and that this Agreement is in the best interest of the Named Plaintiff, the Opt-In Plaintiffs as defined below, and the putative members of the class action;

NOW, THEREFORE, in exchange for and in accordance with the mutual covenants set forth below, it is hereby agreed as follows:

## 1.   DEFINITIONS

(a)   **Agreement.** "Agreement" means this Settlement Agreement and Release.

(b)   **Attorneys' Fees and Cost**s. "Attorneys' Fees and Costs" means the amount paid to Class Counsel from the Gross Settlement Fund pursuant to Section 11 of this Agreement.

(c)   **Class Counsel.** "Class Counsel" means Borrelli & Associates, P.L.L.C., 655 Third Avenue, Suite 1821, New York, New York 10017, and Keegan & Baker, LLP, 2292 Faraday Avenue, Suite 100, Carlsbad, California 92008.

(d)   **Class Members.** "Class Members" shall mean Named Plaintiff, Opt-In Plaintiffs, and all current and former CRAs who worked for Covance in New York State from August 3, 2011 to present, who do not opt out of the Lawsuit, including such claims set forth in Sections 14(a) and/or (b) of this Agreement.

(e)   **Class Period.** "Class Period" shall be defined as the period from August 3, 2011 to the date of this Agreement.

2

(f)     **Collective Period.** "Collective Period" shall be defined as the period from August 3, 2014 to the date of this Agreement.

(g)     **Court.** "Court" means the United States District Court for the Southern District of New York, the Honorable Jesse M. Furman presiding.

(h)     **Covance's Counsel.** "Covance's Counsel" means Robert Steiner, Esq. and Mark Konkel, Esq. of Kelley Drye & Warren LLP, 101 Park Avenue, New York, New York 10178.

(i)     **Covance.** "Covance" means Defendant, Covance Inc.

(j)     **Effective Date.** "Effective Date" means the later of (1) thirty-three (33) days after entry of the Final Approval Order, i.e. an order and/or final judgment by the Court granting final approval of this Agreement and dismissing the case in its entirety with prejudice, if no appeal of such final approval is then pending, or (2) if an appeal of such final approval is then pending, the day after the order is affirmed on appeal.

(k)     **Final Approval Order.** "Final Approval Order" means the order entered by the Court granting final approval of this Agreement.

(l)     **Gross Settlement Amount**. "Gross Settlement Amount" means Two Hundred and Fifty Thousand Dollars and Zero Cents ($250,000.00), which is the amount that Covance will pay to settle the Lawsuit as set forth in this Agreement, excluding Covance's obligation to pay the employer-side payroll taxes on the portion of the settlement that constitutes wages.

(m)     **Gross Settlement Fund – FLSA Collective Action.** "Gross Settlement Fund – FLSA Collective Action" is the total maximum fund available for the Opt-In Plaintiffs, which is One Hundred Eighty-Three Thousand Ninety-Five Dollars and Twenty Cents ($183,095.20), which is the maximum amount Covance will pay to settle the Lawsuit for the Opt-In Plaintiffs as set forth in this Agreement, excluding Covance's obligation to pay the employer-side payroll taxes on the portion of the settlement that constitutes wages.

(n)     **Gross Settlement Fund – New York Class Action.** "Gross Settlement Fund – New York Class Action" is the total maximum fund available for the Rule 23 Class, which is Sixty-Six Thousand Nine Hundred Four Dollars and Eighty Cents ($66,904.80), which is the maximum amount Covance will pay to settle the Lawsuit for the Rule 23 Class as set forth in this Agreement, excluding Covance's obligation to pay the employer-side payroll taxes on the portion of the settlement that constitutes wages.

(o)     **Highly Compensated Employees.** "Highly Compensated Employees" shall refer to all Class Members that received One Hundred Thousand Dollars and Zero Cents ($100,000.00) or more in gross annual income during a calendar year according to Covance's records. If the calendar year worked by the Class Member is less than one full year, the Class Member will be a Highly Compensated Employee if his or her gross annual income would have equaled One Hundred Thousand Dollars and Zero Cents ($100,000.00) or more prorated over twelve months. A Class Member shall only be designated as a Highly Compensated Employee for that calendar year and will not be designated as such for any calendar year in which that Class Member received

or would have received less than One Hundred Thousand Dollars and Zero Cents ($100,000.00) in gross annual income.

(p)  **Individual Payments.** "Individual Payments" means payments to Class Members who do not timely opt out of the settlement as provided in Section 8 of this Agreement, to be distributed in accordance with Section 9 of this Agreement.

(q)  **Lawsuit.** "Lawsuit" means the above-captioned lawsuit styled as *John Sealock v. Covance, Inc.*, Case No.: 17-cv-5857 (S.D.N.Y. August 3, 2017).

(r)  **Named Plaintiff.** "Named Plaintiff" means John Sealock.

(s)  **Net Settlement Fund – FLSA Collective Action.** "Net Settlement Fund – FLSA Collective Action" means the remainder of the Gross Settlement Fund – FLSA Collective Action after pro rata deductions for: (1) the Settlement Claim Administrator's fees; (2) Court-approved attorneys' fees and costs for Class Counsel; and (3) Court-approved Service Award to Named Plaintiff in return for a general release.

(t)  **Net Settlement Fund – New York Class Action.** "Net Settlement Fund – New York Class Action" means the remainder of the Gross Settlement Fund – New York Class Action after pro rata deductions for: (1) the Settlement Claim Administrator's fees; (2) Court-approved attorneys' fees and costs for Class Counsel; and (3) Court-approved Service Award to Named Plaintiff in return for a general release.

(u)  **Opt-In Plaintiffs.** "Opt-In Plaintiffs" means the 129 CRAs who have already joined this Lawsuit by timely filing a Consent to Become a Party Plaintiff form and who are not part of the Rule 23 Class.

(v)  **Opt-Out Statement.** "Opt-Out Statement" means a statement timely submitted by a Class Member requesting to be excluded from the settlement.

(w)  **Parties.** "Parties" shall collectively mean all Class Members and Covance.

(x)  **Preliminary Approval.** "Preliminary Approval" means the date that the Court enters an order preliminarily approving this Agreement, including the procedure for notifying Class Members of their eligibility to participate in the settlement pursuant to this Agreement.

(y)  **Preliminary Approval Order.** "Preliminary Approval Order" means an executed version of the Proposed Preliminary Approval Order attached hereto as Exhibit D, or a version substantially the same in material respects, to be entered by the Court granting, among other things, preliminary approval of the Agreement.  Further revisions, if any, to Exhibit D are subject to final approval by the Parties and the Court, if necessary.

(z)  **Released Claims.** "Released Claims" means any and all federal and state wage-related claims, causes of action, obligations, damages, liabilities, and expenses (inclusive of attorneys' fees and costs) set forth in Section 14(a) and/or (b) of this Agreement.

(aa)     **Released Parties.** "Released Parties" means Covance and its past, present or future direct and indirect parent companies, predecessor entities, successor entities, related companies, direct and indirect subsidiaries, holding entities, affiliates, franchisees, distributors, wholesalers, retailers, advertising and production agencies, and licensors, including all past, present and future officers, directors, managers, members, partners, principals, owners, employees, shareholders, consultants, attorneys, legal representatives, accountants, auditors, consultants, insurers, reinsurers, employee benefit plans, fiduciaries, agents, or other equity interest holders of any of the foregoing, together with any of their heirs, executors, administrators, and assigns, both individually and in their official capacities.

(bb)     **Rule 23 Class.** "Rule 23 Class" or "Rule 23 Class Members" means any CRA who worked for Covance in New York State from August 3, 2011 to present, who does not timely opt out of the Lawsuit.

(cc)     **Settlement Check(s).** "Settlement Check" or "Settlement Checks" refers to the checks issued to Class Members by the claims administrator, Arden Claims Service, LLC, in accordance with the terms of this Agreement.

## 2.     CONDITIONAL NATURE OF AGREEMENT

(a)     This Agreement, including all associated exhibits and attachments, is made for the sole purpose of settling the Lawsuit and all released claims on a class-wide and collective basis. This Agreement is made in compromise of disputed claims. Because the Lawsuit was pleaded as a class and collective action and is being settled on a class and collective basis, this Agreement must receive Court approval. Accordingly, the Parties enter into this Agreement on a conditional basis.

(b)     The Parties will file a Motion for Preliminary Approval and for settlement approval of the FLSA Plaintiffs' FLSA claims pursuant to *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015) (and any related documents). In the event that the Court does not approve the Settlement in the form set forth in this Agreement, or in the event that the associated judgment does not become a Final Judgment for any reason, this Agreement, except for those provisions relating to the interpretation and termination of the Settlement, the conditional nature of this Settlement, and non-admissibility and non-admission of wrongdoing or liability, shall be deemed null and void *ab initio*, shall be of no force or effect whatsoever, shall not be referred to or utilized for any purpose whatsoever, and the negotiation of the Agreement shall remain confidential and subject to the rules of evidence barring admission of settlement materials.

(c)     Covance denies the allegations asserted in the Lawsuit, and specifically that this matter should proceed on a class or collective basis (other than for settlement purposes). Covance has agreed to resolve the Lawsuit via this Agreement, but to the extent this Agreement is deemed void or the Effective Date does not occur, Covance does not waive, but rather expressly reserves, all rights to challenge any and all claims and allegations asserted in the Lawsuit upon all procedural and substantive grounds, including, without limitation, the ability to challenge class and collective action treatment on any grounds, and to assert any and all other potential defenses or privileges.

(d)     The Named Plaintiff and Class Counsel agree that Covance retains and reserves all of the rights set forth in this Agreement, including in this Section 2. Specifically, the Named Plaintiff agrees that, if the Lawsuit is to proceed, he will not argue or present any argument, and hereby waives any argument that, based on the Settlement or this Agreement or any of the exhibits and attachments hereto, or any act performed or document executed pursuant to or in furtherance of the Settlement or this Agreement, Covance should be barred from contesting class certification or collective action decertification on any grounds, or from asserting any and all other potential defenses and privileges.

(e)     If the Lawsuit were to proceed, the Named Plaintiff and Class Counsel expressly reserve the right to prosecute all the claims in the Complaint as well as the right to raise any additional timely claims and/or challenge any and all defenses and allegations asserted by Covance in the Lawsuit.

## 3.     DENIAL OF WRONGDOING OR LIABILITY

(a)     Covance specifically and generally denies all of the claims asserted in the Lawsuit and all other Released Claims; denies all allegations and claims as to liability, damages, penalties, interest, fees and all other forms of relief; denies any and all wrongdoing of any kind whatsoever associated with any of the facts or claims alleged in the Lawsuit; and makes no concessions or admissions of wrongdoing or liability of any kind whatsoever. Covance maintains that CRAs have always been properly classified under all state and federal wage-hour laws, and that, for any purpose other than settlement, the Lawsuit is not suitable or appropriate for class or collective action treatment pursuant to 29 U.S.C. § 216(b), and Rule 23 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."), or any corresponding state law rules.

(b)     The Parties understand and agree that this Agreement represents a compromise of disputed claims, and have agreed to enter into this Agreement to avoid the risks, costs, and delays associated with further proceedings. Nothing contained in this Agreement, nor the fact of the settlement or this Agreement itself, nor the exhibits thereto, nor any act performed or document executed pursuant to or in furtherance of this Agreement may be construed or be used as an admission or evidence of the validity of any claim or allegation, or of any act, omission, liability or wrongdoing on the part of Covance in any action or proceeding of any kind whatsoever, except to enforce this Agreement.

(c)     Pursuant to the applicable rules of evidence, this Agreement, and the exhibits and attachments hereto, shall be inadmissible in any proceeding, except as necessary to effectuate or enforce the terms of the Parties' Settlement.

## 4.     BENEFITS OF THE SETTLEMENT FOR PLAINTIFFS

(a)     The Named Plaintiff and Class Counsel believe that the claims asserted in the Lawsuit and all other Released Claims have merit and that evidence developed to date supports the claims. Class Counsel (with the assistance of the Named Plaintiff) have analyzed and evaluated the merits of the claims made against Covance in the Lawsuit.

(b)     Based on their work and analysis, and their careful evaluation of a number of factors, including: (i) recognizing and acknowledging the expense and length of time needed to prosecute the Lawsuit through dispositive motions, trial and through appeals; (ii) the uncertain outcome and the risk of any litigation, including the possibility that the Lawsuit, if not settled now, might not result in any recovery or might result in a recovery less favorable; (iii) the delays inherent in all litigation including that any recovery might not occur for several years; (iv) the risk that this matter might not be certified on a class basis; and (v) the risk that this matter might be decertified on a collective basis; the Named Plaintiff and Class Counsel are satisfied that the terms and conditions of this Agreement are fair, reasonable, and adequate and that this Agreement is in the best interests of the Class Members.

## 5.     TOTAL SETTLEMENT AMOUNT

(a)     Covance shall pay a total amount not to exceed One Hundred Eighty-Three Thousand Ninety-Five Dollars and Twenty Cents ($183,095.20) ("Gross Fund – FLSA Collective Action") to fully and finally resolve and satisfy on behalf of the Opt-In Plaintiffs: (i) any and all claims alleged in the Complaint, all other wage-hour, notice, wage statement, and compensation-related claims that were or could have been alleged in the Lawsuit, as set forth in Section 14(a) of this Agreement; (ii) any and all attorneys' fees, and expenses incurred by Class Counsel; (iii) the cost of a claims administrator; and (iv) any Court-approved Service Award to the Named Plaintiff.

(b)     Covance shall pay a total amount not to exceed Sixty-Six Thousand Nine Hundred Four Dollars and Eighty Cents ($66,904.80) ("Gross Fund – New York Class Action") to fully and finally resolve and satisfy on behalf of the Rule 23 Class: (i) any and all claims alleged in the Complaint, all other wage-hour, notice, wage statement, and compensation-related claims that were or could have been alleged in the Lawsuit, as set forth in Section 14(b) of this Agreement; (ii) any and all attorneys' fees, and expenses incurred by Class Counsel; and (iii) the cost of a claims administrator; and (iv) any Court-approved Service Award to the Named Plaintiff.

(c)     Covance shall pay any payroll taxes on the wage portion of the payments to be made to Class Members in addition to the Gross Fund – FLSA Collective Action and Gross Fund – New York Class Action amounts. The Gross Fund – FLSA Collective Action and Gross Fund – New York Class Action amounts and Covance's share of employer payroll taxes on the wage portion of payments made to Class Members shall be the sole financial obligation of Covance under this Agreement.

(d)     Covance shall cause the Gross Fund – FLSA Collective Action and Gross Fund – New York Class Action amounts less the portion of such amounts that are allocated as alleged back wages to be paid to the claims administrator, Arden Claims Service, LLC, within twenty (20) days after the Effective Date of this Agreement.

## 6.     CLAIMS ADMINISTRATOR

(a)     The Claims Administrator will be Arden Claims Service, LLC (hereinafter referred to as "Arden"), which was jointly selected by Class Counsel and Covance's counsel. Arden shall establish, maintain, and administer a Qualified Settlement Fund ("QSF") for the purpose of effectuating the terms of this settlement. Arden will be responsible for locating Class Members;

mailing the Notices of Settlement to Class Members in accordance with the Court's preliminary approval order; responding to Class Members' inquiries; calculating Class Members' Individual Payment amounts in accordance with this Agreement and the Court's final approval order; reporting on the state of the settlement to counsel for the Parties; distributing the Individual Payments, the Service Award, and calculating all payroll tax and withholding each Class Member's share of taxes, as appropriate; remitting such withheld funds to the appropriate taxing authorities, as appropriate; preparing and filing appropriate tax reporting forms for such withheld funds, as appropriate; the claims administration process; coordinating collection and compilation of the Settlement Checks for filing with the Court; providing copies of the Settlement Checks to counsel for Covance; preparing a declaration regarding its due diligence in the claims administration process; and performing such other duties as the Parties may jointly direct, as are specified in this Agreement, or that are ancillary or related to claims administration matters. Arden's fees shall be paid pro rata out of the Gross Fund – FLSA Collective Action and Gross Fund – New York Class Action amounts in accordance with Section 6(b).

(b)     Arden will be paid a fee of $20,000 to perform the claims administration tasks essential to effectuate this settlement as described in Section 6(a) and Section 8 of this Agreement.

(c)     Arden will provide regular reports to Class Counsel and counsel for Covance regarding the status of the mailing of the Notices of Settlement to Class Members, the claims administration process, and distribution of the Settlement Checks.

(d)     Covance agrees to cooperate with Arden, provide relevant information to the extent reasonably available and necessary to calculate the Individual Payments, provide Arden with Settlement Checks for the portion of the Individual Payment amounts that are allocated as alleged back wages for Arden's distribution to Class Members, and assist Arden in locating the Class Members.

## 7.     MOTION FOR PRELIMINARY APPROVAL OF THIS AGREEMENT

(a)     Promptly after the execution of this Agreement, the Parties will work cooperatively to file a Motion for an Order Preliminarily Approving the Class Action Settlement and seeking approval of the settlement of the FLSA claims of the Class Members ("Motion for Preliminary Approval"), which must be filed on or by September 16, 2019, or on a subsequent date as ordered by the Court. Covance may not oppose the Motion for Preliminary Approval. Class Counsel will be solely responsible for the filing of the Motion for Preliminary Approval, and shall submit a draft version of the Motion for Preliminary Approval to the counsel for Covance within three (3) calendar days before its filing.  If the Parties cannot agree on the papers, the Parties agree to submit any disagreements to Martin Scheinman, Esq. for resolution of any disagreement.

(b)     The Parties agree that the Motion for Preliminary Approval will include a proposed "Notice of Class Action Settlement and Fairness Hearing" in the form attached hereto as Exhibit B ("Notice of Rule 23 Settlement"), a proposed "Notice of Collective Action Settlement" in the form attached hereto as Exhibit C ("Notice of §216(b) Settlement"), and a proposed Order Preliminarily Approving the Rule 23 Settlement attached hereto as Exhibit D. The Motion for Preliminary Approval, *inter alia*, will seek (i) certification of a class, for settlement purposes only, pursuant to Fed. R. Civ. P. Rule 23, against Covance, consisting of all CRAs who were employed

by Covance in the State of New York on or between August 3, 2011 and the present, (ii) preliminary approval of the Rule 23 settlement, this Agreement, and of the Notice of Rule 23 Settlement to be mailed to the Rule 23 Class Members, and setting the dates by which Rule 23 Class Members may opt-out of or assert objections to the settlement; (iii) approval of the settlement of FLSA claims of the Opt-In Plaintiffs pursuant to *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015); and (iv) setting a date for a fairness hearing for the final approval of the Rule 23 Settlement ("Fairness Hearing").

(c)     Covance's counsel shall, within ten (10) business days of the Order Preliminarily Approving the Settlement, issue notice required by the Class Action Fairness Act, ("CAFA"), 28 U.S.C. § 1715(b).

## 8.     NOTICE TO CLASS MEMBERS; OPT-OUTS; OBJECTIONS

(a)     Within ten (10) days following the entry of the Court's order preliminarily approving the settlement of this Agreement, Covance shall provide to Arden, an Excel spreadsheet in .xlsx electronic format, for all Class Members, the following information: name, Social Security number, last known address, last known personal email address, if any, dates of employment, and other data necessary to calculate the Individual Payments, as that information exists on file with Covance (the "Class Contact List").   The data provided to Arden will also include the employment/payroll data agreed on by the Parties that is needed to calculate each Class Member's settlement payment.

(b)     The Class Contact List, the data and information contained in the Class Contact List, and all other data provided by Covance shall not be disclosed to the Named Plaintiff, or anyone else external to Arden without the written consent of Covance. Arden shall share with Class Counsel at its request the total number and the names, dates of employment, and yearly income of individuals on the Class List, and with prior written notice to Covance's Counsel, the data given to Arden by Covance to calculate the Individual Payments regarding a Class Member who has inquired about his or her own individual participation in the settlement or objected to the settlement in order to enable Class Counsel to respond to such inquiry.

(c)     Within thirty (30) days following the Court's order preliminarily approving this Agreement (or within an alternate period set by the Court), Arden shall mail, via First Class Mail, postage prepaid, and via email, to each Class Member, the Notice of Settlement, in the form approved by the Court, using the addresses and email addresses set forth in the Class Contact List, as maintained and updated by the Arden.  Specifically, Arden will check the address information for each Class Member against the National Change of Address ("NCOA") database maintained by the United States Postal Service ("USPS") for purposes of updating and confirming the mailing addresses of Class Members before the mailing of the service of the Notice.  In order to ensure the most accurate mailing possible, addresses will also be certified via the Coding Accuracy Support System ("CASS"), which appends ZIP +4 and postal codes to records, and verified through the Delivery Point Validation ("DPV"), verifies the addresses to the actual point of delivery and can also identify the address location, and Locatable Address Correction System ("LACS"), which updates business and residential rural route addresses to a street style address.  To the extent an updated address for an individual identified as a Class Member is indicated in the NCOA, CASS, DPV, or LACS databases from the list provided by Defendant, the updated address will be used

for the mailing of the Notice, and the originally provided address (i.e., before it was updated) will not be used.  To the extent that no updated address for an individual identified as a Class Member is indicated in the NCOA, CASS, DPV, or LACS databases from the address information provided by Covance, the original address information provided by Covance will be used to effectuate the mailing of the Notice.

(d)     Unless otherwise ordered by the Court, the Notices of Settlement will be in the forms attached as Exhibits B and C.

(e)     If any Notice of Settlement is returned as undeliverable, Arden will take reasonable steps to endeavor to ascertain a current address, including running a skip trace with the provided Social Security number, and mail the Notice of Settlement to a current address for each such Class Member. Arden shall maintain an updated Class Contact List, which will be provided to Covance periodically and as reasonably requested by Covance or Covance's counsel.

(f)     Arden will mail, along with the Notice of Settlement, a blank IRS Form W-4 and IRS Form W-9, to be completed and returned to Arden. Any such Class Member who fails to provide Arden with a signed IRS Form W-4 shall be deemed to have elected one withholding exemption.

(g)     Any Class Member may opt-out or request to be excluded from the settlement as set forth in this Agreement. Class Members who choose to opt-out must mail a written, signed statement to Arden that states he or she is opting out of the settlement, and include his or her name, job title, address, and telephone number and state, "I opt out of the Covance wage and hour settlement" ("Opt-Out Statement").  To be effective, such Opt-Out Statement must be sent to Arden via first class mail, postage prepaid, and must be postmarked or received by a date certain to be specified on the Notice of Settlement, which date will be sixty (60) days after Arden mails the Notice of Settlement.  Any Opt-In Plaintiff that requests to be excluded from the settlement will be dismissed without prejudice from the lawsuit with a tolling period for their FLSA claims to be ninety days from the date of the Court's Final Approval Order.

(i)     Class Members whose first mailing was returned to Arden as undeliverable will be allowed to opt-out or object up to thirty (30) days from the date of the second mailing but no later than sixty (60) days from the Court's order preliminarily approving the Settlement and this Agreement. Arden shall not attempt more than two (2) mailings of the Notice of Settlement to any Class Member, and no mailing shall occur more than thirty (30) days after the first mailing to Class Members.

(h)     Arden shall keep accurate records of the dates in which it sends Notice of Settlement to Class Members.

(i)     Arden will stamp the postmark or received date on the original of each Opt-Out Statement that it receives and shall serve copies of each Opt-Out Statement on Class Counsel and counsel for Covance no later than five (5) days after receipt thereof. Class Counsel will, along with the Motion for Final Approval, file with the Clerk of the Court, stamped copies of any Out-Out Statements. Arden will, within twenty-four (24) hours of the end of the out-out period, send a final list of all Opt-Out Statements to Class Counsel and counsel for Covance by email. Arden will

retain the stamped originals of all Opt-Out Statements and originals of all envelopes accompanying Opt-Out Statements in its files until such time as Arden is relieved of its duties and responsibilities under this Agreement.

(j)     Any Class Member who does not properly submit a timely Opt-Out Statement pursuant to this Agreement will be deemed to have accepted the settlement and the terms of this Agreement and will be eligible for payment hereunder, as provided for herein. Any Class Member who opts out will not participate in the settlement, will not receive any settlement payment, and will not be bound by the terms of the Settlement Agreement, if it is approved, or by the Final Order and Judgment Entry in this Action.

(k)     A Rule 23 Class Member who does not opt out of the settlement may object to the proposed settlement at the Fairness Hearing. The objection must be submitted to Arden in writing and must be postmarked or received by a date certain to be specified on the Notice of Settlement, which date will be sixty (60) days after Arden mails the Notice of Settlement. The written objection must include: (1) the words, "I object to the Covance wage-and-hour settlement"; (2) all reasons for the objection (any reasons not included in the Written Objection will not be considered); and (3) the name, job title, address, and telephone number for the Rule 23 Class Member making the objection. An objection will not be valid if it does not specifically comply with all of the requirements listed herein. Arden will stamp the date received on the original and send copies of each written objection to Class Counsel and counsel for Covance by email and overnight delivery no later than three (3) days after receipt thereof. Class Counsel shall file the date-stamped originals of any and all written objections with the Court along with the Motion for Final Approval.

(l)     A Rule 23 Class Member who submits a timely objection also has the right to appear at the Fairness Hearing either in person or through his or her counsel, if his or her written objection so states. A Rule 23 Class Member who timely objects and objector who wishes to appear at the Fairness Hearing must state his or her intention to do so in writing at the time he or she submits his or her written objection. A Rule 23 Class Member who timely objects may withdraw his or her objections at any time. No Rule 23 Class Member may appear at the Fairness Hearing unless he or she filed a timely written objection that complies with the procedures required under this Agreement. No Rule 23 Class Member may present an objection at the Fairness Hearing based on a reason not stated in his or her written objection absent the Court's permission to do so. Any Rule 23 Class Member who has submitted an Opt-Out Statement may not submit objections to the settlement or speak at the Fairness Hearing.  Any Rule 23 Class Member may appear through counsel at the Fairness Hearing but must state in his or her objection that he or she is represented by counsel, or in the alternative, his/her counsel must file a Notice of Appearance at least fifteen days prior to the fairness hearing.

(m)     Class Counsel and/or counsel for Covance may file with the Court a written response to any filed written objections filed by a Rule 23 Class Member no later than three (3) calendar days before the Fairness Hearing.

(n)     Sufficiently in advance of the Fairness Hearing, but not later than thirty (30) days before the Fairness Hearing, or as Class Counsel and Covance's Counsel may otherwise agree, Class Counsel will submit to counsel for Covance a draft Motion for Judgment and Final Approval of the settlement and this Agreement. Class Counsel will allow counsel for Covance at least seven

11

(7) days to review and comment on the terms of such papers, and agrees to work cooperatively with counsel for Covance to make efforts to ensure the language of such motion is acceptable to counsel for Covance. Any amendments to the deadlines in this paragraph only will not constitute a breach of the Agreement.

(o)     Unless otherwise ordered by the Court, not later than fourteen (14) days before the Fairness Hearing, Class Counsel shall file a Motion for Judgment and Final Approval of the settlement and this Agreement ("Motion for Judgment and Final Approval") requesting that the Court shall, among other things, (i) approve the settlement as fair, adequate, and reasonable under the FLSA, and binding on all Class Members who have opted in to the Lawsuit or who have cashed their Individual Payment checks; (ii) finally certify the Rule 23 Class for purposes of settlement, (iii) approve the settlement as fair, adequate, reasonable, and binding on all Rule 23 Class Members who have not timely opted out in accordance with this Agreement, (iv) approve and incorporate the terms of the release for all Class Members; (v) enter an order permanently enjoining all Class Members who have not timely opted out from pursuing and or seeking to reopen claims that have been released by this Agreement; and (vi) enter final judgment in accordance with this Agreement and dismiss the Lawsuit with prejudice, retaining jurisdiction over the settlement's enforcement and construction. Covance shall join the Motion for Judgment and Final Approval and shall not oppose the Motion for Judgment and Final Approval. Class Counsel will be solely responsible for the filing of the Motion for Judgment and Final Approval and shall submit a draft version of the Motion for Judgment and Final Approval to the counsel for Covance to the counsel for Covance within three (3) calendar days before its filing.  The Parties agree to request that the Court approve a final approval order and judgment as part of the final approval motion drafting process.

(p)     At the Fairness Hearing, the Parties will request that the Court issue all of the relief set forth in the Motion for Judgment and Final Approval.

## 9.     ALLOCATION AND DISTRIBUTION OF THE NET TOTAL SETTLEMENT AMOUNT.

(a)     Each Class Member will receive an Individual Payment, which shall be determined by Arden pursuant to the following formulas:

(i)     For Opt-In Plaintiffs:

(1)     For each calendar year during the Collective Period, each applicable Opt-In Plaintiff shall be designated as a Highly Compensated Employee for the qualifying calendar years as defined in Section 1(n) of this Agreement;

(2)     For each Opt-In Plaintiff that is designated as Highly Compensated Employee for every calendar year that he/she worked during the Collective Period, that Opt-In Plaintiff shall receive Two Hundred Dollars and Zero Cents ($200.00) from the Net Settlement Fund – FLSA Collective Action;

(3)     Each Opt-In Plaintiff shall be assigned one point for each week worked during the Collective Period for calendar years during the Collective Period in which they were not Highly Compensated Employees;

(4)     The number of points shall be calculated for each Opt-In Plaintiff not designated as Highly Compensated Employees for each calendar year during the Collective Period;

(5)     The number of points for all Opt-In Plaintiffs not designated as Highly Compensated Employees for each calendar year during the Collective Period shall be added to obtain the "Total Denominator";

(6)     Each Opt-In Plaintiff's points shall be divided by the Total Denominator to obtain each Opt-In Plaintiff's allocated percentage of the Net Settlement Fund – FLSA Collective Action;

(7)     After subtracting the Net Settlement Fund – FLSA Collective Action by the total of each of the Two Hundred Dollars and Zero Cents ($200.00) payments to the Opt-In Plaintiffs designated as Highly Compensated Employees, each Opt-In Plaintiff's percentage shall then be multiplied by the remainder of the Net Settlement Fund – FLSA Collective Action to determine the Individual Payment of each Opt-In Plaintiff.

(8)     Each Opt-In Plaintiff whose Individual Payment is less than Two Hundred Dollars and Zero Cents ($200.00) shall receive Two Hundred Dollars and No Cents ($200.00) to be deducted from the Net Settlement Fund – FLSA Collective Action.  The total of all possible Individual Payments of Opt-In Plaintiffs shall not exceed the Net Settlement Fund – FLSA Collective Action.

(9)     The total of all possible Individual Payments to Opt-In Plaintiffs shall not exceed the Net Settlement Fund – FLSA Collective Action.

(ii)     For the Rule 23 Class:

(1)     For each calendar year during the Class Period, each applicable Rule 23 Class member shall be designated as a Highly Compensated Employee as defined in Section 1(n);

(2)     For each Rule 23 Class Member that is designated as a Highly Compensated Employee for every calendar year that they worked during the Class Period, that Rule 23 Class Member shall receive Two Hundred Dollars and Zero Cents ($200.00) from the Net Settlement Fund – New York Class Action;

(3)     Each Rule 23 Class Member shall be assigned one point for each week worked during the Class Period for calendar years in which they were not Highly Compensated Employees;

(4)     The number of points shall be calculated for each Rule 23 Class Member not designated as Highly Compensated Employees for each calendar year during the Class Period;

(5)     The number of points for all Rule 23 Class Members not designated as Highly Compensated Employees for each calendar year during the Class Period shall be added to obtain the "Total Denominator";

(6)     Each Rule 23 Class Member's points shall be divided by the Total Denominator to obtain each Rule 23 Class Member's allocated percentage of the Net Settlement Fund – New York Class Action;

(7)     After subtracting the Net Settlement Fund – New York Class Action by the total of each of the Two Hundred and Zero Cents ($200.00) payments to the Highly Compensated Employees, each Rule 23 Class Member's percentage shall then be multiplied by the remainder of the Net Settlement Fund – New York Class Action to determine the Individual Payment of each Rule 23 Class Member.

(8)     Each Rule 23 Class Member whose Individual Payment is less than $200.00 shall receive Two Hundred Dollars and Zero Cents ($200.00) to be deducted from the Net Settlement Fund – New York Class Action.

(9)     The total of all possible Individual Payments of Rule 23 Class members shall not exceed the Net Settlement Fund – New York Class Action.

(b)     Within twenty (20) days of the Court's final approval of this Agreement, Arden shall deliver to Class Counsel and counsel for Covance a schedule of each Class Member's Individual Payment. Such information shall also be provided to Class Counsel and counsel for Covance prior to Final Approval hearing.

(c)     Within fifteen (15) days following the Effective Date (as defined in Section 13 below) Covance shall provide Arden with Settlement Checks for the portion of the Individual Payment amounts that constitute alleged back wages as set forth in Section 12(b). The Settlement Checks shall be distributed by Arden in accordance with Section 9(d) and (e).

(d)     Within (20) days following the Effective Date (as defined in Section 13 below) Arden shall: (i) distribute to Class Counsel its Court-approved reimbursement of expenses; (ii) distribute to Class Counsel its Court-approved fee amount; (iii) distribute to Named Plaintiff his Court-approved Service Award; (iv) distribute to Arden its Court-approved Administrator Fee; and (v) distribute to each Class Member his or her Individual Payment detailed in Section 9(a), less applicable withholding taxes as appropriate.

(e)     Each Individual Payment will be sent by Arden by mailing two Settlement Checks to each Class Member at his or her address as listed on the Class Contact List, as maintained and updated by the Arden.  Arden shall provide information related to the amount of each Settlement Check and to whom it is payable and to whom it was mailed and the date of mailing, to Class Counsel and counsel for Covance.

(f)     If a Settlement Check is returned to Arden by the post office with a forwarding address, Arden shall re-mail the check to the forwarding address within two (2) business days following receipt of such returned check, and provide Class Counsel and counsel for Covance with proof of such mailing. If a Settlement Check is returned to Arden without a forwarding address,

Arden shall perform a skip trace using at least two different databases, including but not limited to Credit Header, (which identifies information for persons who ever applied for any credit), and a directory assistance database, to attempt to find a new address, and if a new address is found, Arden shall re-mail the Settlement Check to said new address identified by such skip trace within three (3) business days following receipt of such returned check.

(g)     Class Members will have one hundred and eighty (180) days from the date of the mailing of the Settlement Checks to cash their Settlement Checks. If any Class Member's Settlement Check is not cashed within sixty (60) days after it is mailed or re-mailed, whichever is later, Arden will send the Class Member a letter informing him or her that, unless the check is cashed within one hundred and eighty (180) days after the date on the check, it will expire and become non-negotiable, and Arden will offer to replace the check if it was lost or misplaced, but not cashed. Class Members who lose or do not receive their Settlement Checks must make a request to Arden for a replacement check(s) within one hundred and fifty (150) days of the check's initial issue date. Arden shall notify Covance within five (5) days of any request for a replacement check, including any amounts that are allocated as alleged back wages. All replacement checks shall be valid for the remainder of the 180-day period starting from the initial mailing date, or forty-five (45) days from the date of mailing, whichever period is longer.

(h)     Covance shall report to Arden and Class Counsel the total sum of all uncashed Settlement Checks that are allocated as alleged back wages. Arden will then determine its fees for sending a second round of settlement checks ("Second Round Checks") based on the uncashed Settlement Checks to be distributed *pro rata* to those Class Members who cashed their initial checks.  The *pro rata* amounts will be based upon the applicable fund that the Class Member belongs to, either FLSA or Rule 23, and apportioned accordingly.  If the total amount of all uncashed Settlement Checks, minus the costs to Arden to distribute the Second Round Checks, is greater than or equal to $0.00 there will be a second round of checks distributed to those Class Members who cashed their Settlement Checks.  Arden will issue these Second Round Checks within two-hundred (200) days after the date the Settlement Checks are originally mailed to Class Members by Arden.  These Second Round Check payments will be reported to the IRS as 1099-Misc non-wage income representing liquidated damages and interest.  If the amount of uncashed checks minus the costs of distribution is less than $0.00, Arden shall not send the Second Round Checks and that amount instead will be paid to Covance.

(i)     If Arden issues Second Round Checks, Class Members must cash their Second Round Checks within (90) days from the date the Second Round Checks are mailed to Class Members by Arden.  The total sum of all uncashed Second Round Checks after the ninety (90) day period shall be returned to Covance.

## 10.    SERVICE AWARD

(a)     Class Counsel shall seek approval for an incentive payment of Ten Thousand Dollars and Zero Cents ($10,000.00) for services Named Plaintiff rendered on behalf of the Class Members (the "Service Award") , which shall be apportioned between the Gross Settlement Fund – FLSA Collective Action and the Gross Settlement Fund – New York Class Action. Covance shall take no position with respect to, and shall not object to, this request. The Court approved incentive payment amount will be paid by Arden at the same time as the class payments.

(b)     The substance of the above-referenced Named Plaintiff's application for the Service Award is not a material part of this Agreement and is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy, and good faith of the settlement of the Lawsuit. The outcome of the Court's ruling on the application for the Service Award shall not terminate this Agreement or otherwise affect the Court's ruling on the Motion for Judgment and Final Approval. Any amount of the Service Award not approved by the Court will be allocated to the net settlement funds on a prorate basis. The Service Award will not be paid if Covance voids this Agreement as permitted by Section 15 or if this Agreement does not receive final Court approval.

## 11.    ATTORNEYS' FEES; LITIGATION EXPENSES.

(a)     Class Counsel shall seek approval for an award of attorneys' fees in an amount of thirty-three (33%) percent of the Gross Fund Amount, or $83,333, which shall be apportioned between the Gross Settlement Fund – FLSA Collective Action and the Gross Settlement Fund – New York Class Action. Class Counsel shall also seek reimbursement of reasonable litigation costs and expenses in the amount of $17,253.86 (not including Arden's fees), to be deducted from the Gross Fund Amount, which shall be apportioned between the Gross Settlement Fund – FLSA Collective Action and the Gross Settlement Fund – New York Class Action.  Covance shall take no position with respect to, and shall not oppose, such attorneys' fees and costs/expenses applications.

(b)     Any attorneys' fees or litigation costs and expenses not approved by the Court become part of the Net Settlement Fund, and Covance will not have any additional liability for Class Counsel's attorneys' fees and costs beyond that which is approved by the Court. No attorneys' fees or litigation costs and expenses will be paid if Covance voids this Agreement as permitted by Section 15 or if this Agreement does not receive final Court approval.

(c)     The substance of Class Counsel's application for attorneys' fees and costs is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy, and good faith of the settlement of the Lawsuit. The outcome of any proceeding related to Class Counsel's application for attorneys' fees and costs shall not terminate this Agreement or otherwise affect the Court's ruling on the motion for final approval.

(d)     All attorneys' fees and litigation expenses and costs approved by the Court shall be paid without withholding and reported to the IRS on Form 1099 as appropriate.

## 12.    PAYROLL TAXES AND WITHHOLDINGS

(a)     The Individual Payments shall be allocated fifty (50%) percent to alleged back wages and fifty (50%) percent to alleged interest and/or liquidated/statutory damages.

(b)     All Individual Payments to Class Members shall be paid as follows:

(i)     The amounts that are allocable to unpaid wages shall be paid by separate check from Covance and shall be subject to applicable payroll and withholding taxes (including, but not limited to, federal, state, and local income tax withholding and the employee share of FICA tax). Covance shall be responsible for, and shall pay, any and all applicable employer tax

16

contributions associated with the fifty (50%) of the Individual Payments allocated to back wage payments, including the employer share of FICA, all of which shall be in addition to, and not be paid out of, the Gross Settlement Amount.

(ii)     The amounts that are allocable to liquidated damages and/or interest shall be paid by a separate check from Arden which payroll and withholding taxes shall not be deducted.

(c)     As appropriate, Covance will issue an IRS Form W-2 to Class Members for the portions of their Individual Payments that constitute back wages, and Arden will issue an IRS Form 1099 to Class Members for the portion of their Individual Payments that represent liquidated damages and/or interest.

(d)     The Named Plaintiff and each Class Member acknowledge and agree that each will be solely responsible for all taxes, interest, and penalties due to be paid with respect to any payment received pursuant to this Agreement (other than the employer's share of FICA tax and any unemployment tax due) and will indemnify, defend, and hold Covance, the other Releasees, and Arden harmless from and against any and all taxes, interest, penalties, attorneys' fees, and other costs imposed on Covance, any other Releasee, or Arden as a result of the Named Plaintiff's and/or a Class Member's failure to timely pay such taxes.

(e)     The employee portion of all applicable income and payroll taxes will be the responsibility of the individual Class Member receiving a settlement check with respect to the 1099 payments.

## 13.     EFFECTIVE DATE

(a)     The Effective Date of this Agreement is the later of (1) thirty-three (33) days after entry of an order and/or final judgment by the Court granting final approval of this Agreement and dismissing the case in its entirety with prejudice, if no appeal of such final approval is then pending, or (2) if an appeal of such final approval is then pending, the day after the order is affirmed on appeal.

(b)     If the Court does not enter an order granting final approval of the settlement and this Agreement, or such order does not become final, the Parties shall return to their positions prior to the filing of the motion for preliminary approval of this Agreement unless the Parties jointly agree to (1) seek reconsideration or appellate review of the decision denying entry of the order, or (2) attempt to renegotiate the settlement and seek Court approval of the renegotiated settlement. In the event any reconsideration and/or appellate review is denied, or a mutually agreed-upon settlement is not reached or not approved:

(i)     The Lawsuit will proceed as if no settlement had been attempted. In that event, the class certified for purposes of settlement shall be decertified, and Covance may assert all potentially applicable defenses in connection with the Lawsuit (e.g., contest whether the Lawsuit should be maintained as a class action or collective action, contest the merits of the claims being asserted in the Lawsuit, etc.). In such case, the Parties will negotiate and submit for Court approval a revised case management schedule.  Plaintiff does not waive his right to move for class certification and shall not be prohibited from doing so in that event.

(ii)      Arden will provide notice to Class Members that the Agreement did not receive final approval and that, as a result, no payments will be made to Class Members under the Agreement. Such notice shall be emailed and mailed by Arden via first class mail, postage prepaid, to the addresses used by Arden in mailing the Notice of Settlement.

(iii)      If the Class Settlement does not become Effective, with the exception of Covance's exercise of its right to revoke this Agreement as addressed in Section 15 below, the Parties agree to share equally Arden's costs related to the settlement and the notice to the class that the settlement was proposed for approval and not approved.  If either party unilaterally terminates the Agreement, the terminating party agrees to bear Arden's full costs related to the settlement and the notice to the class.

(c)      If any Opt-In Plaintiff requests to exclude him/herself from the settlement, that Opt-In Plaintiff's claims will be dismissed from the action without prejudice as of the date of the Final Approval Order, with a tolling period of ninety-days from the date of the Final Approval Order with respect to his/her statute of limitations.

**14.      RELEASE**

By operation of the entry of an Order by the Court granting final approval of the Settlement and this Agreement and except as to such rights or claims as may be created by this Agreement:

(a)      For Opt-In Plaintiffs:

Upon the Effective date, all Opt-In Plaintiffs who did not timely opt-out pursuant to this Agreement, on behalf of themselves and their heirs, successors, executors, administrators, and assigns ("Releasors"), fully and finally release and discharge Covance and its past, present or future direct and indirect parent companies, predecessor entities, successor entities, related companies, direct and indirect subsidiaries, holding entities, affiliates, franchisees, distributors, wholesalers, retailers, advertising and production agencies, and licensors, including all past, present and future officers, directors, managers, members, partners, principals, owners, employees, shareholders, consultants, attorneys, legal representatives, accountants, auditors, consultants, insurers, reinsurers, employee benefit plans, fiduciaries, agents, or other equity interest holders of any of the foregoing, together with any of their heirs, executors, administrators, and assigns, both individually and in their official capacities (collectively, "Releasees"), of and from any and all claims, causes of action, obligations, damages, liabilities, and expenses (inclusive of attorneys' fees and costs) of any kind or nature whatsoever: (i) alleged in the Lawsuit, arising out of, or related to the factual allegations in the Lawsuit, including but not limited to, all claims under the FLSA and the NYLL; or (ii) arising under any federal, state, and/or local wage and hour or compensation-related law, and which arose or accrued during their employment up to the date of the execution of this Agreement. Without limitation, the released claims of Opt-In Plaintiffs include all claims relating to minimum wages, overtime compensation, regular wages, spread-of-hours pay, employee benefits, supplemental wages, wage notice, pay statement, record-keeping violations, liquidated damages, interest, attorneys' fees or costs, or other wages or similar amounts, whether pursuant to any written or oral contract, promise, or other understanding, including any claims asserted as an alleged third party beneficiary of any contract, or pursuant to any federal,

state, or local rule, regulation or law, including, but not limited to (all as amended), any claim arising under the FLSA and the NYLL.

(b)     For Rule 23 Class Members:

(i)     Upon the Effective date, all Rule 23 Class Members who did not timely opt-out and who cashed their Individual Payment checks pursuant to this Agreement, on behalf of themselves and their heirs, successors, executors, administrators, and assigns ("Releasors"), fully and finally release and discharge Covance and its past, present or future direct and indirect parent companies, predecessor entities, successor entities, related companies, direct and indirect subsidiaries, holding entities, affiliates, franchisees, distributors, wholesalers, retailers, advertising and production agencies, and licensors, including all past, present and future officers, directors, managers, members, partners, principals, owners, employees, shareholders, consultants, attorneys, legal representatives, accountants, auditors, consultants, insurers, reinsurers, employee benefit plans, fiduciaries, agents, or other equity interest holders of any of the foregoing, together with any of their heirs, executors, administrators, and assigns, both individually and in their official capacities (collectively, "Releasees"), of and from any and all claims, causes of action, obligations, damages, liabilities, and expenses (inclusive of attorneys' fees and costs) of any kind or nature whatsoever: (i) alleged in the Lawsuit, arising out of, or related to the factual allegations in the Lawsuit, including all claims under the FLSA and the NYLL; or (ii) arising under any federal, state, and/or local wage and hour or compensation-related law, and which arose or accrued during their employment, up to the date of the execution of this Agreement. Without limitation, the released claims of Rule 23 Class Members who cashed their Individual Payment checks include all claims relating to minimum wages, overtime compensation, regular wages, spread-of-hours pay, employee benefits, supplemental wages, wage notice, pay statement, record-keeping violations, liquidated damages, interest, attorneys' fees or costs, or other wages or similar amounts, whether pursuant to any written or oral contract, promise, or other understanding, including any claims asserted as an alleged third party beneficiary of any contract, or pursuant to any federal, state, or local rule, regulation or law, including, but not limited to (all as amended), any claim arising under the FLSA and the NYLL.

(ii)     Upon the Effective date, all Rule 23 Class members who did not timely opt-out and who did not cash their Individual Payment checks pursuant to this Agreement, on behalf of themselves and their heirs, successors, executors, administrators, and assigns ("Releasors"), fully and finally release and discharge Covance and its past, present or future direct and indirect parent companies, predecessor entities, successor entities, related companies, direct and indirect subsidiaries, holding entities, affiliates, franchisees, distributors, wholesalers, retailers, advertising and production agencies, and licensors, including all past, present and future officers, directors, managers, members, partners, principals, owners, employees, shareholders, consultants, attorneys, legal representatives, accountants, auditors, consultants, insurers, reinsurers, employee benefit plans, fiduciaries, agents, or other equity interest holders of any of the foregoing, together with any of their heirs, executors, administrators, and assigns, both individually and in their official capacities (collectively, "Releasees"), of and from any and all claims, causes of action, obligations, damages, liabilities, and expenses (inclusive of attorneys' fees and costs) of any kind or nature whatsoever: (i) alleged in the Lawsuit, arising out of, or related to the factual allegations in the Lawsuit, including all claims under the New York Labor Law only; or (ii) arising under any state and/or local wage and hour or compensation-related laws, and which arose or accrued during their

19

employment up to the date of the execution of this Agreement. Without limitation, the Released Claims of Rule 23 Class Members who did not cash their Individual Payment checks include all New York State claims relating to minimum wages, overtime compensation, regular wages, spread-of-hours pay, employee benefits, supplemental wages, wage notice, pay statement, record-keeping violations, liquidated damages, interest, attorneys' fees or costs, or other wages or similar amounts, whether pursuant to any written or oral contract, promise, or other understanding, including any claims asserted as an alleged third party beneficiary of any contract, or pursuant to any state, or local rule, regulation or law, including, but not limited to (all as amended), any claim arising under the New York Labor Law.

(c)     Except as provided in this Agreement, the Named Plaintiff, on behalf of the Class Members and each individual Class Member, hereby forever and finally releases and discharges any claim that he, she, or they may have against any Releasee for attorneys' fees or litigation expenses or costs associated with Class Counsel's representation of the Class Members and the Named Plaintiff. Class Counsel further understands and agrees that any attorneys' fees and litigation costs approved by the Court will be the full, final, and complete payment of all attorneys' fees and costs associated with Class Counsel's representation in the Lawsuit, except for any fees and expenses, including any expenses associated with collection efforts, that Class Counsel incurs if Covance breaches this Agreement, and Class Counsel must take action to enforce this Agreement.

(d)     The releases set forth in this Section 14 shall not apply to Class Members who timely opt-out pursuant to this Agreement. The releases in this Section 14 shall also not apply to compromise any right to workers' compensation benefits or any claim for discrimination or retaliation. Regardless of the amounts attributed to any particular claim under the allocation formula herein, each individual Class Member is subject to the full release.

(e)     In addition to the foregoing release provisions, the amounts paid to each Class Member shall be deemed full satisfaction of such Class Member's released claims as set forth in this Section 14, regardless of the amount attributed to any particular claim under the allocation formula set forth herein.

(f)     All settlement checks mailed to Class Members shall contain on the back of each such check, the following limited endorsement:

**CONSENT TO JOIN AND FINAL RELEASE OF CLAIMS:**

I understand that I have up to 180 calendar days from the date I was mailed this Settlement Check to sign and cash this settlement check. By endorsing this check, I affirm I previously consented to join in the case entitled *Sealock vs. Covance, Inc.*, No. 17-cv-5857, now pending in Southern District of New York, and agree to be bound by the Settlement Agreement negotiated by Class Counsel in that case. I irrevocably and unconditionally waive, release, extinguish, acquit, and forever discharge any claims of any kind whatsoever that I have or might have for unpaid wages or overtime pay, or any other claim for violation of federal, state, local or other applicable laws regulating hours of work, wages (including overtime wages), the timing and/or payment of wages, or recordkeeping of any kind (including, but

20

not limited to, the FLSA, 29 U.S.C. § 201, *et seq.*, or the NYLL, §§ 160, 652), or any damages based upon, relating to, or arising out of any such claims (including, but not limited to, back pay, liquidated damages, or other relief), relating to my employment with Defendant up to and including [insert the final Order adjudicating this matter].

Signature: _____   Dated: _____

(g)     Any modification or amendment of the language set forth in Section 14(f) by any Class Member may not be accepted by Covance, and if not accepted, may void the Settlement Check. Covance has the discretion to accept or reject any such modification or amendment. Covance shall inform and provide a copy to Class Counsel of any redeemed Settlement Check that has been rejected. Moreover, to the extent a Class Member modifies or amends the above language and Covance voids the Settlement Check, Arden will send correspondence to such Class Member explaining that the Settlement Check was voided, informing the Class Member that he or she can speak to Class Counsel, and enclosing a re-issued Settlement Check absent any modification or amendment and present it for payment, and be given 30 days, or the remainder of the 180 calendar day period, whichever is longer, for receipt of the letter from Arden in which to redeem the re-issued Settlement Check. Arden shall provide Covance with a signed copy of each Settlement Check after it has been redeemed.

## 15.     VOIDABILITY OF SETTLEMENT

(a)     If 30 or more Class Members opt out of the Class as provided in this Agreement, Covance may, but is not obligated to, void the Agreement. If Covance wishes to exercise this right, it must do so by e-mail to Class Counsel no later than ten (10) calendar days after the end of the opt-out period. No party will solicit, encourage, or discourage opt-outs.  Any attempt to do so by Plaintiffs or Covance or their respective attorneys will be deemed a breach of this Settlement Agreement.  If such breach occurs, the Court has the authority, upon proper motion, to void any opt-out who was improperly solicited or encouraged.  If Covance exercises its right to revoke this Agreement, the Lawsuit will proceed as if there was no attempt at settlement, except that Covance will be responsible for Arden's fees set forth in Section 6(b) of this Agreement. If Covance exercises its right to revoke this Agreement, the classes certified for purposes of settlement shall be decertified, the Parties will be restored to their positions prior to the settlement negotiations and settlement of the Lawsuit, and Covance may contest whether this Lawsuit should be maintained as a class action or collective action and contest the merits of the claims being asserted by Plaintiffs in the Lawsuit.

## 16.     MISCELLANEOUS

(a)     Covance will not retaliate in any manner against any former or current employee of Covance who (i) participated in the Lawsuit, or (ii) participates in the settlement provided for in this Agreement.

(b)     The Parties have negotiated all the terms and conditions of this Agreement at arm's length.

(c)     The Parties have jointly drafted this Agreement through their respective counsel and, as such, this Agreement shall not be construed for or against any party by virtue of draftsmanship. The captions or headings of the Sections of this Agreement have been inserted for convenience of reference only and shall have no effect upon the construction or interpretation of any part of this Agreement. All of the terms and conditions of this Agreement in the exact form set forth herein are material to this Agreement and have been relied upon by the Parties in entering into this Agreement.

(d)     This is a binding agreement, subject to approval by the Court, and may not be modified except by a writing executed by all of the Parties hereto or as otherwise provided herein. No waiver, modification, or amendment of the terms of this Agreement, whether purportedly made before or after the Court's approval of this Agreement, shall be valid or binding unless in writing and signed by or on behalf of all Parties, and then only to the extent set forth in such written waiver, modification, or amendment, subject to any required Court approval. Any failure by any party to insist upon the strict performance by the other party of any of the provisions of this Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement, and such party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement.

(e)     The Parties shall cooperate fully with each other and work together diligently and in good faith to obtain preliminary and final approval of this Agreement by the Court. Each of the Parties, upon the request of the other, agrees to perform such further acts and to execute and deliver such other documents as are reasonably necessary to carry out the provisions and intent of this Agreement, including acts of complying with the Court's orders regarding the form and method of notice to the Class.

(f)     Class Counsel and the Named Plaintiff, represent and warrant that they have not assigned or transferred, or purported to assign or transfer, to any person or entity, any claim or any portion thereof or interest therein, including, but not limited to, any interest in the Lawsuit, or any related action.

(g)     This Agreement shall in all respects be interpreted, enforced and governed by and under the laws of the State of New York, without regard to choice of law principles.

(h)     Following the final approval of this Agreement, the Court shall retain jurisdiction to enforce this Agreement and to resolve any disputes arising thereunder.

(i)     This Agreement is a binding agreement and contains all material agreed-upon terms for the Parties to seek a full and final settlement of the Lawsuit. This Agreement shall be binding upon the Parties and, with respect to the Named Plaintiff and all Class Members, their spouses, children, representatives, heirs, administrators, executors, beneficiaries, conservators, attorneys, and assigns.

(j)     This Agreement is valid and binding if signed by Covance's authorized representative and by the Named Plaintiff and Class Counsel.

**17.     PROCEDURES IN THE EVENT OF BREACH.**

(a)     The Parties acknowledge that a breach of any provision of this Agreement can cause damage and injury to the non-breaching party. If a court of competent jurisdiction determines that a party hereto has breached any of the terms of this Agreement, the Parties agree that, in addition to any remedies available to the non-breaching party in law or equity for a breach of this Agreement, the non-breaching party shall be entitled to all of their reasonable costs and expenses, including reasonable attorneys' fees, and any reasonable attorneys' fees incurred in litigating a motion for attorneys' fees, incurred in enforcing the terms of this Agreement and/or defending any action(s).

**18.     SEVERABILITY.**

(a)     Should any provision of this Agreement be declared illegal or unenforceable by any court of competent jurisdiction, the Parties agree that said court has the full discretion to interpret or modify all such provisions to render them enforceable. If such interpretation or modification is not possible, such provision immediately shall become null and void, leaving the remainder of this Agreement in full force and effect, which then shall be interpreted to bar any and all claims that any Class Member may have against any Releasee.

**19.     NOTICE.**

(a)     Unless otherwise provided herein, any notice that must be sent under this Agreement shall be sent either by overnight delivery (such as FedEx) or by certified first class mail, return receipt requested, postage prepaid. If notice is given by overnight delivery, it will be deemed effective on the delivery date, as confirmed by the courier. If notice is given by certified first class mail, it will be deemed effective three days after it is sent. Notice shall be given to the following:

If to Named Plaintiff or Class Members:

Michael J. Borrelli
Borrelli & Associates, P.L.L.C.
655 Third Avenue, Suite 1821
New York, New York 10017
Tel. No. (212) 679-5000
Fax No. (212) 679-5005
MJB@employmentlawyernewyork.com

With copy to:

Patrick Keegan
Keegan & Baker, LLP
2292 Faraday Avenue, Suite 100
Carlsbad, CA 92008
Tel: 760-929-9329
Fax: 760-929-9260

pkeegan@keeganbaker.com

If to Covance:

Robert I. Steiner
Mark A. Konkel
Kelley Drye & Warren LLP
101 Park Avenue
New York, New York 10178
Tel: (212) 808-7800
Fax: (212) 808-7897
rsteiner@kelleydrye.com
mkonkel@kelleydrye.com

**20.   COUNTERPARTS**

(a)     This Settlement may be executed in counterparts, and may be signed electronically via PDF. When each Party has signed and delivered at least one such counterpart, each counterpart shall be deemed an original, and, when taken together with other signed counterparts, shall constitute one Settlement, which shall be binding upon and effective as to all Parties. Electronic and facsimile transmissions of this Settlement shall be deemed originals.

**[The remainder of this page is left intentionally blank]**

IN WITNESS WHEREOF, the undersigned have duly executed this Agreement as of the date indicated below:

**FOR PLAINTIFFS:**

**JOHN SEALOCK**

John Sealock                                    Date: _17 Sep 2019_

**BORRELLI & ASSOCIATES, P.L.L.C. (AS TO FORM)**

Jeffrey Maguire                                 Date: __9/18/19__

**KEEGAN & BAKER, LLP (AS TO FORM)**

Patrick Keegan                                  Date: __9/18/2019__

**FOR DEFENDANT:**

COVANCE, INC.

_____                         Date: _____
Name:
Title:

IN WITNESS WHEREOF, the undersigned have duly executed this Agreement as of the date indicated below:

**FOR PLAINTIFFS:**

**JOHN SEALOCK**

_____     Date: _____
John Sealock


**BORRELLI & ASSOCIATES, P.L.L.C. (AS TO FORM)**

_____     Date: _____
Jeffrey Maguire

**KEEGAN & BAKER, LLP (AS TO FORM)**

_____     Date: _____
Patrick Keegan


**FOR DEFENDANT**:

**COVANCE, INC.**

_____     Date: ___09_|_18_|_2019___
Name: Sandra D. van der Vaart
Title: Senior Vice President and
Global General Counsel



25

**KELLEY DRYE & WARREN LLP (AS TO FORM)**

_____     Date: 9-18-19
Robert I. Steiner