UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOHN SEALOCK, on behalf of himself, individually,
and on behalf of all others similarly-situated,

Plaintiff,

- against -

COVANCE, INC.,

Defendant.

Civil Action No. 17-cv-5857 (JMF)

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' CONSENT MOTION FOR FINAL APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT, SERVICE AWARDS, AN AWARD OF ATTORNEYS' FEES AND EXPENSES, AND THE ENTRY OF FINAL JUDGMENT**

Jeffrey R. Maguire, Esq.
Alexander T. Coleman, Esq.
Michael J. Borrelli, Esq.
BORRELLI & ASSOCIATES, P.L.L.C.
*Attorneys for Plaintiffs*
655 Third Avenue, Suite 1821
New York, New York 10017
Tel. (212) 679-5000

Patrick Keegan, Esq.
KEEGAN & BAKER, LLP
*Attorneys for Plaintiffs*
2292 Faraday Avenue, Suite 100
Carlsbad, California 92009
Tel. (760) 929-9303

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES……………………………………………………………………iii

I.  PRELIMINARY STATEMENT ...................................................................................1

II.  BACKGROUND ...........................................................................................................2

    A.  Procedural History, Plaintiffs' Allegations, Discovery, and Mediation............2

    B.  Order Granting Preliminary Approval of Settlement.......................................3

    C.  Claims Administration .....................................................................................3

III.  ANALYSIS ...................................................................................................................5

    A.  The Rule 23 Class Action Settlement is Fair, Adequate, and Reasonable ..............................................................................................5

        1.  Procedural Fairness ................................................................................6

        2.  Substantive Fairness ...............................................................................7

            *a.*  *The Reaction of the Class to the Settlement*...................................8

            *b.*  *The Highly-Compensated Exemption post-Nevada*.......................8

            *c.*  *The Fairness of the Awards to the Highly Compensated Employees and Whether Such Funds Should Instead be Distributed Pro Rata to Other Class Members* ............................9

            *d.*  *The Fairness and Reasonableness of the Proposal for Uncashed Funds to Revert to Defendant* ...................................11

    B.  The Court Should Approve the Settlement of the FLSA Claims ...................12

    C.  Service Award .................................................................................................13

    D.  Attorneys' Fees...............................................................................................15

        1.  The Percentage Method is the Preferred Method for Awarding Attorneys' Fees in Common Fund Cases in this Circuit ....................15

            *a.*  *The Second Circuit Recently Found Percentage of the Gross Settlement Fund, Rather than Percentage of Fund Net Expenses to be Fair and Reasonable*...................................15

    *b.*  ***The Goldberger Factors Support an Award of One-Third of the Gross Fund Created***.......................................................17

      *i.*  ***The Firm's Time and Labor*** ...............................18

      *ii.*  ***The Magnitude and Complexities of the Litigation***.........19

      *iii.*  ***The Risk of Litigation*** .......................................20

      *iv.*  ***The Quality of the Representation***................................20

      *v.*  ***The Requested Fee in Relation to the Settlement***............21

      *vi.*  ***Public Policy Considerations***............................22

   **2.**  **The Lodestar Cross-Check Further Supports an Award of One-Third of the Settlement Fund**........................................................23

    *a.*  ***The Lodestar Multiplier is Within a Reasonable Range***............23

    *b.*  ***The Firm's Requested Rates are Fair and Reasonable*** .............23

 **E.**  **Litigation Expenses**........................................................24

 **F.**  **Claims Administrator's Fees and Costs**........................................25

**IV.**  **CONCLUSION** .........................................................................25

# TABLE OF AUTHORITIES

| Cases | Page(s) |
|---|---|

*Alaska Electrical Pension Fund v. Bank of America Corp.*,
  2018 WL 6250657 (S.D.N.Y. Nov. 29, 2018) ........................................ 17

*Asare v. Change Grp. Of N.Y., Inc.*,
  2013 WL 6144764, at *18 (S.D.N.Y. Nov. 18, 2013) ................................ 17, 20, 21

*Azogue v. 16 for 8 Hospitality LLC*,
  2016 WL 441422 (S.D.N.Y. Aug. 19, 2016) ...................................... 13, 16

*Beckman v. KeyBank, N.A.*,
  293 F.R.D. 467 (S.D.N.Y. 2013) .............................................. 6, 19, 23

*Bijoux v. Amerigroup New York, LLC*,
  2016 WL 2839797 (E.D.N.Y. May 12, 2016) ........................... 13, 20, 22

*Cabrera v. CBS Corp.*,
  2019 WL 502131 (S.D.N.Y. Feb. 8, 2019) ........................................ 13

*Chavarria v. New York Airport Serv., LLC*,
  875 F. Supp. 2d 164 (E.D.N.Y. 2012) ........................................... 8

*Cheeks v. Freeport Pancake House, Inc.*,
  796 F.3d 199 (2d Cir. 2015) ............................................... 1, 13, 14

*City of Detroit v. Grinnell Corp.*,
  495 F.2d 448 (2d Cir. 1974) ................................................ 1, 7, 20

*Copper v. Cavalry Staffing, LLC et al.*,
  No. 14-cv-3676 (E.D.N.Y. Feb. 12, 2018) ...................................... 24

*County of Suffolk v. Long Island Lighting*,
  907 F.2d 1295 (2d Cir. 1990) ................................................... 6

*D'Amato v. Deutsche Bank*,
  236 F.3d 78 (2d Cir. 2001) ..................................................... 6

*Deposit Guar. Nat'l Bank v. Roper*,
  445 U.S. 326 (1980) .......................................................... 23

*Donnelly v. Peter Luger of Long Island, Inc.*,
  2014 WL 12769046 (E.D.N.Y. Nov. 13, 20104)........................................ 6

*Febus v. Guardian First Funding Grp., LLC*,
  870 F. Supp. 2d 337 (S.D.N.Y. 2012) ...................................................25

*Fernandez v. Zoni Language Cntrs., Inc.*,
  858 F.3d 45 (2d Cir. 2017)................................................................. 9

*Fisher v. SD Protection Inc.*,
  18-cv-2504 (2d Cir. Feb. 4, 2020) ........................................... 13, 17, 22

*Flores v. Mamma Lombardi's of Holbrook, Inc.*,
  104 F. Supp. 3d 290, 298 (E.D.N.Y. 2015) .......................................... 14

*Fresno Cnty. Employees' Ret. Ass'n v. Isaacson/Weaver Family Trust*,
  925 F.3d 63 (2d Cir. 2019)............................................................ 15, 16

*Goldberger v. Integrated Res. Inc.*,
  209 F.3d 43 (2d Cir. 2000).......................................................... *passim*

*Guaman v. Ajna-Bar NYC*,
  2013 WL 445896 (S.D.N.Y. Feb. 5, 2013) ........................................... 22

*Haas v. Verizon New York, Inc.*,
  2015 WL 5785023 (S.D.N.Y. Sept. 30, 2015) ....................................... 10

*Hernandez v. Immortal Rise, Inc.*,
  306 F.R.D. 91 (E.D.N.Y. 2015) ........................................... 6, 8, 14, 22

*In re Global Crossing Sec. & ERISA Litig.*,
  225 F.R.D. 436 (S.D.N.Y. 2004) ......................................................... 8

*Johnson v. Brennan*,
  2011 WL 4357376 (S.D.N.Y. Sept. 16, 2011)....................................... 15

*Kadden v. VisuaLex, LLC*,
  910 F. Supp. 2d 523 (S.D.N.Y. 2012).............................................. 10, 11

*Kochilas v. National Merchant Servs., Inc.*,
  2015 WL 5821631 (E.D.N.Y. Oct. 2, 2015)...................................... *passim*

*Kornell v. Haverhill Retirement Sys.*,
  18-cv-3673 (2d Cir. Nov. 1, 2019) ..................................................... 16

*Lynn's Food Stores, Inc. v. United States*,
  679 F.2d 1350 (11th Cir. 1982) ......................................................... 13

*Malchman v. Davis*,
  706 F.2d 426 (2d Cir. 1983)................................................................. 6

*Masters v. Wilhelmina Model Agency, Inc.*,
  473 F.3d 423 (2d Cir. 2007)............................................................... 16

*Morris v. Affinity Health Plan, Inc.*,
  859 F. Supp. 2d 611 (S.D.N.Y. 2012)................................................. 6

*Nevada v. U.S. Dep't of Labor*,
  218 F. Supp. 3d 520 (E.D. Tex. 2016)................................................ 9

*Parker v. Time Warner Entertainment Co., L.P.*,
  631 F. Supp. 2d 242 (E.D.N.Y. 2009) .............................................. 15

*Perez v. Merrick Deli & Grocery, Inc. et al.*,
  13-cv-5166-ILG-JO (E.D.N.Y. Apr. 4, 2019) .................................. 24

*Powers v. Eichen*,
  229 F.3d 1249 (9th Cir. 2000) .......................................................... 16

*Pucciarelli v. Lakeview Cars, Inc.*,
  2017 WL 2778029 (E.D.N.Y. June 26, 2017) ............................. 18, 24

*Quow v. Accurate Mech.*,
  2018 WL 3368673 (S.D.N.Y. July 10, 2019) .................................. 13

*Romero v. La Revise Assocs, L.L.C.*,
  58 F. Supp. 3d 411 (S.D.N.Y. 2014)................................................. 14

*Saldana v. Middletown Car-G-Cam Uni Corp.*,
  2015 WL 12591678 (S.D.N.Y. Sept. 23, 2015)................................... 7

*Sand v. Greenberg*,
  2010 WL 69359 (S.D.N.Y. Jan. 7. 2010) ......................................... 23

*Sandoval v. Materia, Bros., Inc.*,
  2013 WL 1767748 (S.D.N.Y. Mar. 5, 2013)
  *report and recommendation adopted,* 2013 WL 1759581 (S.D.N.Y. Apr. 24, 2013)............. 25

*Siddiky v. Union Square Hospitality Grp., LLC*,
  2017 WL 2198158 (S.D.N.Y. May 17, 2017) ......................... 17, 20, 24

*Sierra v. Spring Scaffolding LLC*,
  2015 WL 10912856 (E.D.N.Y. Sept. 30, 2015) ............................... 14

*Thornhill v. CVS Pharmacy, Inc.*,
  2014 WL 1100135 (S.D.N.Y. Mar. 20, 2014) ...................................................... 15

*Vivaldo v. United Talmudical Acad. of Kiryas Joel, Inc., et al*,
  2015 WL 4922961 (S.D.N.Y. June 18, 2015)
  *report and recommendation adopted,* 2015 WL 10793126 (S.D.N.Y. Sept. 17, 2015) ..... 21, 22

*Vivaldo v. United Talmudical Academy of Kiryas Joel, Inc.*,
  14-cv-2636-GWG (S.D.N.Y. Feb. 9, 2018) ........................................................... 24

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
  396 F.3d 96 (2d Cir. 2005) ................................................................................ 6, 8

*Wolinsky v. Scholastic, Inc.*,
  900 F. Supp. 2d 332 (S.D.N.Y. 2012) ........................................................... 1, 13, 14

## Other Authorities

4 ALBA CONTE & HERBERT B. NEWBERG, NEWBERG ON CLASS ACTIONS § 11.41, at
  108 (4th ed. 2002) .............................................................................................. 8

## Rules

Fed. R. Civ. P. 23(e) .............................................................................................. 6

## Regulations

29 C.F.R. § 541.601(a)(1) ...................................................................................... 10

# I.   PRELIMINARY STATEMENT

This wage and hour action brought pursuant to the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL") concerns the claims of named-Plaintiff John Sealock and the 128 Opt-in Plaintiffs (together as "FLSA Plaintiffs"), as well as the claims of the Rule 23 New York settlement class ("Rule 23 Plaintiffs," and referred to collectively with FLSA Plaintiffs, where appropriate, as "Plaintiffs" or "Class Members"), against Defendant Covance, Inc. ("Covance" or "Defendant," and referred to with Plaintiffs as "the Parties").  On October 8, 2019, the Court entered an order deferring judgment on Plaintiffs' Omnibus Consent Motion approving the FLSA Settlement, and granting preliminary approval of the New York class action settlement, certification of a Rule 23 settlement class, appointment of named-Plaintiff as class representative, appointment of named-Plaintiff's counsel as class counsel, and approval of the proposed notice of settlement and class action settlement procedure (hereinafter "Preliminary Approval Order"). *See* Dkt. No. 276.  Now, on consent of the Parties, Plaintiffs respectfully submit this motion seeking final approval of their class and FLSA settlement pursuant to Federal Rule of Civil Procedure 23(e), *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974), *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015), and *Wolinsky v. Scholastic, Inc.*, 900 F. Supp. 2d 332 (S.D.N.Y. 2012) (Furman, *J.*).

For the reasons set forth herein, and upon the annexed Declaration of Jeffrey R. Maguire, Esq. ("Maguire Decl."), executed on February 11, 2020, and Patrick N. Keegan, executed on February 11, 2020, and all exhibits annexed thereto, and the Affidavit of Angela Ferrante, on behalf of Arden Claims Service, LLC as Claims Administrator ("Ferrante Aff."), and all exhibits annexed thereto, and upon all prior pleadings and proceedings had herein, Plaintiffs, on consent of the Parties, respectfully request that the Court grant this motion and enter an Order as follows:

1) Granting approval of the settlement for the FLSA Plaintiffs ("FLSA Settlement") pursuant to *Cheeks* and the Parties' Settlement Agreement and Release ("Settlement Agreement"), annexed as **Exhibit A** to the Maguire Decl.;

2) Granting final approval of the settlement for the Rule 23 Plaintiffs ("Rule 23 Settlement") pursuant to *Grinnell* and the Parties' Settlement Agreement;

3) Authorizing the distribution of settlement checks to all Class Members who did not exclude themselves from the settlement representing their share of the Settlement Fund;

4) Awarding a Service Award to the Named Plaintiff in the amount of $10,000.00 and providing for the release of all claims as specified in the Settlement Agreement;

5) Awarding attorneys' fees in the amount of $83,333.00, for legal services performed in prosecuting and settling the claims in this action, to Class Counsel;

6) Awarding $17,253.86 for costs and out-of-pocket expenses to Class Counsel;

7) Awarding $20,000.00 for fees and costs to Arden Claims Service, LLC ("Arden");

8) Providing for the release of all claims as specified in the Settlement Agreement by all Class Members who did not properly and timely opt-out of the settlement; and

9) Dismissing this action against Defendant with prejudice, but with the Court's continued jurisdiction over the construction, interpretation, implementation, and enforcement of the Parties' settlement and over the administration and distribution of the settlement fund.

## II.  BACKGROUND

### A.  Procedural History, Plaintiffs' Allegations, Discovery, and Mediation

For a complete recount of the procedural history of this action, the named-Plaintiff's allegations, the discovery exchanged in this action, and the mediation at which the Parties' agreed to the proposed settlement of the collective and class action now before the Court, Plaintiffs respectfully refer the Court to the section of their Preliminary Approval Motion addressing same. *See* Dkt. No. 273, § II.A, pp. 14-20.

**B.      Order Granting Preliminary Approval of Settlement**

In its October 8, 2019 Preliminary Approval Order, the Court certified two separate classes, contingent upon and for the purposes of settlement only. *See* Dkt. No. 276, ¶¶ 5-6.  Additionally, *inter alia*, the Court approved the Parties' proposed Notice of Class Action Settlement ("Rule 23 Notice") as revised by the Court's instruction to include language that a recipient's immigration status does not affect the recipient's entitlement to recover under the settlement, and additionally approved the Parties' proposed Notice of Collective Action Settlement ("Section 216(b) Notice," and together with the Rule 23 Notice as "the Notices") subject to the same revision. *See* Dkt. No. 276, ¶¶ 7-8.  The Order additionally required Arden to send the Notices by no later than November 7, 2019, with any opt-out statements or objections to be received by on or before January 9, 2020. *See* Dkt. No. 276, ¶ 13.  The Court's Order also scheduled a briefing schedule for this motion and a fairness hearing for on March 12, 2020, at 3:30 p.m. *See* Dkt. No. 276, ¶¶ 16-17.

**C.      Claims Administration**

The parties jointly selected and the Court in its Preliminary Approval Order appointed Arden to administer the settlement. *See* Ferrante Aff., ¶ 3.  On October 18, 2019, Defendant's counsel provided Arden with a list (hereinafter, the "Class List") containing the name, and if available, last known mailing and email addresses of each of the 171 Class Members. *See* Ferrante Aff., ¶ 5.  The mailing addresses contained in the Class List were processed and updated utilizing the National Change of Address Database ("NCOA") maintained by the United States Postal Service ("USPS"). *See* Ferrante Aff., ¶ 6.  The NCOA contains changes of address information filed with the USPS.  In the event that any individual had filed a USPS change of address request, the address listed with the NCOA was utilized in connection with the mailing of the Notice Packet. *See* Ferrante Aff., ¶ 6.

On October 23, 2019, Arden received the Court-approved FLSA Collective Action Notice and New York Class Action Notices, which when combined with blank copies of IRS W-9 and W-4 tax forms and a postage pre-paid, pre-addressed return envelope, comprised the Notice Packets to be sent to Class Members. *See* Ferrante Aff., ¶ 4. The Notice Packets advised Class Members of their inclusion in the Settlement, their right to opt-out of the Settlement, and the Rule 23 Plaintiffs' right to object to the Settlement, and the implications of each such action. *See* Ferrante Aff., ¶ 4. The Notice Packets additionally advised Class Members of the applicable deadlines and pertinent events, including the date and location of the Fairness Hearing, the approximate amount that each Class Member would receive from the settlement, and how Class Members could obtain additional information. *See* Ferrante Aff., ¶ 4. A sample FLSA and Rule 23 Notice Packet is attached to the Ferrante Aff. as **Exhibits 1** and **2**. On November 7, 2019, Arden mailed Notice Packets via First Class Mail to all 171 Class Members contained in the Class List. *See* Ferrante Aff., ¶ 7. On this same date, Arden additionally emailed the Notice Packets to sixty-seven of the Class Members whose email addresses were contained in the Class List. *See* Ferrante Aff., ¶ 7.

Of the 171 Notice Packets mailed, a total of five were returned as undeliverable by the USPS, three of which contained forwarding addresses to which Arden re-mailed them. *See* Ferrante Aff., ¶ 8. For those two returned without forwarding addresses, Arden performed an advanced search by using LexisNexis, a reputable research tool. *See* Ferrante Aff., ¶ 8. Arden used the Class Member's name, previous address, and social security number, if one was available, to try and obtain a current address. *See* Ferrante Aff., ¶ 8. Through the two advanced address searches conducted, Arden was able to locate two updated addresses and promptly mailed Notice Packets to those updated addresses. *See* Ferrante Aff., ¶ 8. One of these two re-mailed Notice

Packets was again returned as undeliverable. *See* Ferrante Aff., ¶ 8. Ultimately, the number of Class Members who received Notice Packets was 168 out of the final class list of 171. *See* Ferrante Aff., ¶ 9. Three class members were not ultimately located for a total undeliverable rate of approximately 2%. *See* Ferrante Aff., ¶ 9.

Arden received one request for exclusion from the Settlement, from Stephanie Denise Bailey, which is attached to the Ferrante Aff. as **Exhibit 3**, and did not receive any objections. *See* Ferrante Aff., ¶¶ 10-11. As detailed in Plaintiffs' Preliminary Approval Motion, the Gross Settlement Fund is to be divided into two separate tranches, with the first tranche relating to the FLSA Collection Action totaling $183,095.20, and the second tranche relating to the New York Class Action totaling $66,904.80, for a combined total of $250,000.00. *See* Ferrante Aff., ¶ 12. The breakdown of the Net Settlement Funds are detailed in the Maguire Declaration and Ferrante Affidavit.

## III. <u>ANALYSIS</u>

### A. <u>The Rule 23 Class Action Settlement is Fair, Adequate, and Reasonable</u>

Federal Rule of Civil Procedure 23(e) requires court approval for a class action settlement "to ensure that it is procedurally and substantively fair, reasonable, and adequate." *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 474 (S.D.N.Y. 2013) (citing Fed. R. Civ. P. 23(e)); *accord Kochilas v. National Merchant Servs., Inc.*, 2015 WL 5821631, at *3 (E.D.N.Y. Oct. 2, 2015). More specifically, a court "must carefully scrutinize the settlement to ensure its fairness, adequacy and reasonableness." *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (citation omitted).

As explained in detail below, because this settlement is clearly fair, reasonable, and adequate, the Court should approve it.

### 1. <u>Procedural Fairness</u>

"To determine procedural fairness, courts examine the negotiating process leading to the settlement." *Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 617-18 (S.D.N.Y. 2012) (citing *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005); *accord Hernandez v. Immortal Rise, Inc.*, 306 F.R.D. 91, 99 (E.D.N.Y. 2015) (collecting cases). In assessing the procedural fairness of a class settlement, courts favor "early settlement of class actions, when warranted." *Donnelly v. Peter Luger of Long Island, Inc.*, 2014 WL 12769046, at *4 (E.D.N.Y. Nov. 13, 20104) (collecting cases).

Here, as thoroughly explained in Plaintiffs' Preliminary Approval Motion, the process leading up to settlement strongly indicates procedural fairness. Indeed, although this settlement was reached before any motion for Rule 23 class certification, the Parties litigated and this Court decided Plaintiffs' opposed first motion for conditional certification, distributed notice to putative collective members, completed paper discovery aimed at the viability of nation-wide conditional certification, granted Plaintiffs' unopposed motion for nation-wide conditional certification, exchanged information relevant to the claims and potential damages of all Class Members, and conducted many telephonic interviews with the FLSA Plaintiffs about the relevant information of their employment, giving Plaintiffs more than sufficient information to determine the reasonable range of settlement at this stage. *See generally,* Dkt. No. 273, § II.A, pp. 4-9. Additionally, the Parties participated in two private mediations, one on October 29, 2018 with the Honorable Howard B. Weiner (Ret.) in San Diego, California, and the second on May 31, 2019 in Port Washington, New York with Martin F. Scheinman, Esq., a highly-experienced employment and labor law arbitrator and mediator, the second of which led to resolution of the matter on a collective and class-wide basis, further exemplifying the fairness of the procedure leading to settlement. *See*

*Saldana v. Middletown Car-G-Cam Uni Corp.*, 2015 WL 12591678, at *1 (S.D.N.Y. Sept. 23, 2015) (citation omitted) (recognizing that a presumption of fairness "is increased when a settlement is reached with the assistance of an experienced mediator").

Based on these factors, and the procedural history extensively addressed in seeking and obtaining preliminary approval from the Court, as well that fairness of the settlement procedure that the Court endorsed in its Preliminary Approval Order, procedural fairness is unquestionably satisfied.

## 2.      Substantive Fairness

In addition to being procedurally fair, the Rule 23 Settlement also satisfies the substantive fairness factors that courts in this Circuit apply when determining whether final approval of a class action settlement is appropriate. *See Beckman*, 293 F.R.D. at 474 (citing *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974)).  More specifically, in *Grinnell*, the Second Circuit held that courts should consider the following factors when evaluating a class action settlement for final approval:

> (1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the state of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

495 F.2d at 463 (citations omitted), *abrogated on other grounds by Goldberger v. Integrated Res. Inc.*, 209 F.3d 43 (2d Cir. 2000).  Here, Plaintiffs refer the Court to their evaluation of the *Grinnell* factors in their Preliminary Approval Motion (*see* Dkt. No. 273, pp. 29-38), with the exception of the "reaction of the class to the settlement," which can obviously only be evaluated following

notice to the class. Additionally, pursuant to the Court's Preliminary Approval Order, Plaintiffs address the Court's substantive issues with respect to the Highly Compensated Employee exemption and the reasonableness of the reversion of any uncashed settlement funds.

### a. The Reaction of the Class to the Settlement

"It is well-settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy." *Chavarria v. N.Y. Airport Serv., LLC*, 875 F. Supp. 2d 164, 173 (E.D.N.Y. 2012) (citation omitted). The Second Circuit has emphasized that "[i]f only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement." *Wal-Mart Stores, Inc.*, 396 F.3d at 118 (citation omitted); *see Hernandez*, 306 F.R.D. at 100 (finding "[t]he fact that the vast majority of class members neither objected nor opted out is a strong indication of fairness") (internal quotations omitted).

Here, not a single Rule 23 Plaintiff filed an objection and only one FLSA Plaintiff opted-out, which overwhelmingly indicates the settlement's fairness and recommends final approval. Indeed, fully informed of the approximate amount that each Class Member would receive and the option for all Class Members to opt-out from the settlement - - even the FLSA Plaintiffs who had already opted-in - - only one FLSA Plaintiff out of 129 chose to do so. Additionally, not a single Rule 23 Plaintiff either opted-out or objected to the settlement. This *Grinnell* factor solidly supports approval.

### b. The Highly-Compensated Exemption post-Nevada

Without argument or analysis, the court in *Granda v. Trujilo*, 2019 WL 367983, at *7 (S.D.N.Y. Jan. 30, 2019), incorrectly held that the HCE salary threshold was increased to $134,004, citing 29 C.F.R. 541.601(b) as support. In brief, on March 23, 2014, President Obama

issued a memorandum directing the Secretary of Labor to "modernize and streamline the existing overtime regulations for executive, administrative, and professional employees." *Nevada v. U.S. Dep't of Labor*, 218 F. Supp. 3d 520, 524 (E.D. Tex. 2016) (citation omitted). In response to President Obama's memorandum, "the Department of Labor published a Notice of Proposed Rulemaking to revise 29 C.F.R. Part 541," and on May 23, 2016, issued a final version of the rule ("Final Rule"). *Id.* at 525. Although the Final Rule, which revised 29 C.F.R. Part 541 to, *inter alia*, raise the annual salary for highly compensated employees from $100,000.00 to $134,004.00, the court in *Nevada* issued a preliminary injunction enjoining the rule from going into effect. *See Fernandez v. Zoni Language Cntrs., Inc.*, 858 F.3d 45, 49 n.5 (2d Cir. 2017) (recognizing nationwide enjoinment of amendment to 20 C.F.R. Part 541). The Trump administration, however, did not pursue appeal of the preliminary injunction or the re-institution of the Final Rule. Indeed, according to the Department of Labor's more recent final rule on 29 C.F.R. Part 541, "the HCE level was set at $100,000 in the 2004 final rule and increased to $134,004 in the 2016 final rule, but the Department has continued to enforce the $100,000 level in light of the district court's invalidation of the 2016 final rule."[1] Effective January 1, 2020, the salary level, four years later, increased from $100,000 only to $107,432. See 29 C.F.R. § 541.601(a)(1).

      c.     *The Fairness of the Awards to the Highly Compensated Employees and Whether Such Funds Should Instead be Distributed Pro Rata to <u>Other Class Members</u>*

Unquestionably, how to handle the high percentage of FLSA Plaintiffs subject to the HCE exemption posed a challenging question to the Parties with respect to continued litigation versus settlement. Although the Parties recognized that an argument existed that the Clinical Research Associates ("CRAs") earning $100,000.00 or more for their entire employment with Defendant

---

[1] https://www.dol.gov/whd/overtime2019/overtime_FR.pdf

were not subject to the exemption, the likelihood of success on this point was extremely low.  This is because the HCE exemption requires satisfaction of only one prong of the test used to determine executive, professional or administratively exempt employees, and there was little to no argument that all CRAs' primary duties included "the performance of office or non-manual work directly related to the management or general operations of [Covance's] customers." *Kadden v. VisuaLex, LLC*, 910 F. Supp. 2d 523, 535 (S.D.N.Y. 2012); *see Haas v. Verizon New York, Inc.*, 2015 WL 5785023, at *3 (S.D.N.Y. Sept. 30, 2015)  (explaining that HCE exemption applies to "employees whose total annual compensation is at least $100,000 are exempt from the FLSA's overtime requirements if they customarily and regularly perform[ ] any one or more of the exempt duties or responsibilities of an executive, administrative or professional employee") (internal quotations omitted).  However, the sixty-seven HCE Class Members are still entitled to their proposed $200.00 award – and not zero – from the settlement fund because of this additional defense.  This is because HCE Class Members, like the claims of all other CRAs, contend that "[t]he distinction between administrative and production work 'is not a clear one' when it comes to non-manufacturing positions." *Kadden*, 910 F. Supp. 2d at 540.  But, in the event that the Court found that HCE Class Members were performing duties that qualified as production, Covance may still establish that HCE Class Members exercised "discretion and independent judgment" in "matters of significance."  *Kadden*, 910 F. Supp. 2d at 541.  Therefore, it is fair and reasonable to award HCE Class Members the proposed $200.00 award and such funds should not be distributed pro rata to the rest of the Class.

Based on the sixty-seven HCE Class Members, fifty-five FLSA Plaintiffs and twelve Rule 23 Plaintiffs, the parties agreed to settle the matter at an amount in excess of the damages calculated for the actual overtime damages owed to the non-HCE Class Members.  Indeed, as provided in

Plaintiffs' Preliminary Approval Motion, for all CRA workweeks not subject to the HCE exemption, Plaintiffs' counsel, with help from Employment Research Corporation, determined that FLSA Plaintiffs' maximum damage calculations for actual unpaid overtime totaled $156,081.26, while damage calculations for actual unpaid overtime for all Rule 23 Plaintiffs completed by Class Counsel totaled $57,033.64. This totals $213,114.90. Accounting for this, as well as Plaintiffs' expenses, which were also discussed at mediation, the Parties ultimately agreed to settle for $250,000.00. Indeed, based on the $200.00 award to each HCE Class Member, the total amount is $13,800.00 (69 x 200).

Furthermore, in order to ensure fairness to the HCE Class Members, Defendant agreed to permit FLSA Plaintiffs that had already opted-in to the action to opt out after reading the FLSA Notice. This was in addition to Rule 23 Plaintiffs receiving the required opportunity to opt out or object to the settlement. The Notices explained in a straight-forward manner that Class Members who received $100,000.00 or more in income for the relevant period of employment would receive $200.00 based upon the federal and state exemption laws. As previously explained, only one FLSA Plaintiff and no Rule 23 Plaintiff chose to opt out of the settlement. This class reaction to the settlement strongly indicates that Class Members substantially believed the settlement structure to be fair and reasonable.

> d.    *The Fairness and Reasonableness of the Proposal for Uncashed Funds to Revert to Defendant*

Importantly, the Parties did not agree to what is typically thought of as a reversionary settlement, in which the funds attributed to those class members who do not submit timely claim forms reverts to the defendant. Instead, the sole issue that the Parties sought to avoid here was the continued expense of re-sending checks in the event that Class Members failed to cash them. Thus, pursuant to the Parties' agreement, any uncashed checks will not automatically revert, but rather

will be re-distributed *pro rata* by Arden solely amongst those who did in fact cash their checks. *See* Plaintiffs' Preliminary Approval Motion, p. 30, ¶ 11. The only event that would prevent this re-distribution would be if Arden determines that the cost of sending the second round of checks to be greater than the amount of uncashed checks, in which case the anticipated insignificant amount would be returned to Covance. Based on the Parties' understanding with Arden that the cost of such redistribution would itself be insignificant, this prevents an impractical situation where an insignificant amount of uncashed money is re-distributed *pro rata* to a large amount of Class Members at the expense of Arden. In sum, the Parties intended this provision to be anti-reversionary, as the Parties' intent is that checks uncashed after 180 days will be redistributed to Class Members who already cashed their checks, and therefore will almost certainly cash their second round of checks. Thus, the full fund will most likely be distributed.

### B.     The Court Should Approve the Settlement of the FLSA Claims

In addition to Rule 23 settlements, settlements of FLSA claims also require court approval. *Cheeks*, 796 F.3d at 206-07. The standard "for approval of an FLSA settlement is lower than for a Rule 23 settlement" because an FLSA settlement does not implicate the same due process concerns as does a Rule 23 Settlement. *Quow v. Accurate Mech.*, 2018 WL 3368673, at *4 (S.D.N.Y. July 10, 2019) (citation omitted). "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of settlement." *Azogue v. 16 for 8 Hospitality LLC*, 2016 WL 441422, at *5 (S.D.N.Y. Aug. 19, 2016) (citation omitted). Furthermore, "[i]f the proposed settlement reflects a reasonable compromise over contested issues, the settlement should be approved." *Id.* at *5 (citation omitted).

In evaluating a proposed settlement of FLSA claims, most courts in this Circuit apply the five-factor test that this Court articulated in *Wolinsky*, 900 F. Supp. 2d at 335, and which the

Second Circuit has recently endorsed. *Fisher v. SD Protection Inc.*, 18-cv-2504, Dkt. No. 65-1, p. 19 (2d Cir. Feb. 4, 2020). The *Wolinsky* factors consider: (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion. *See Wolinsky*, 900 F. Supp. 2d at 335.

Here, because the factors required for approval of a Rule 23 settlement are more extensive, and indeed inclusive of those required for approval of a settlement of FLSA claims, and because Plaintiffs addressed these factors in the Preliminary Approval Motion, Plaintiffs do not separately discuss each FLSA factor here. *See, e.g., Romero v. La Revise Assocs., L.L.C.*, 58 F. Supp. 3d 411, 422 (S.D.N.Y. 2014). For the reasons described *infra*, as provided in Plaintiffs' Preliminary Approval Motion, the "settlement was a result of contested litigation and arm's length negotiation." *Kochilas*, 2015 WL 5821631, at *7. The Court should approve it under *Cheeks* and *Wolinsky*.

### C.   Service Award

"Service awards are common in class action cases and serve to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiffs." *Hernandez*, 306 F.R.D. at 101 (citation omitted). Indeed, "[i]t is important to compensate plaintiffs for the time they spend and the risks they take." *Id.*; *see Sierra v. Spring Scaffolding LLC*, 2015 WL 10912856, at *9 (E.D.N.Y. Sept. 30, 2015) (approving service awards of $10,000 and $7,500 to plaintiffs).

Here, named-Plaintiff Sealock has vigorously pursued the interests of both the FLSA and Rule 23 Plaintiffs, and for purposes of settlement, the interests of Plaintiff Sealock and the class are aligned. Indeed, Sealock was instrumental in the investigation and analysis of the vital facts relevant to the FLSA and Rule 23 Plaintiffs' claims and the defenses that Defendant raised throughout the course of the litigation. At the outset of the case, Plaintiff Sealock worked with counsel in preparing a declaration to submit in opposition to Defendant's motion to strike the class claims and in support of his cross-motion for conditional certification. He additionally assisted by reviewing the multiple affidavits that Defendant submitted from other CRAs, assessing their accuracy and explaining certain job details to counsel. Sealock also participated in discovery by providing responses to Defendant's interrogatories and supplying counsel with many of the documents used in support of the motion for conditional certification and early analysis of the case. Lastly, Sealock attended the day-long mediation, which eventually led to the resolution of the action on behalf of the FLSA and the Rule 23 Plaintiffs. Compared to many approved employment class action service awards, the service award requested here is modest, representing only 4.0% of the total settlement. *See, e.g.*, *Johnson v. Brennan*, 2011 WL 4357376, at *2 (S.D.N.Y. Sept. 16, 2011) (awarding service awards of $10,000.00 each to four plaintiffs, totaling 9.1% of $440,000.00 FLSA/NYLL settlement). Importantly, the Class Members were notified of the exact amount of the service award to Sealock in the Notice, and again, there were no objections and only one opt-out, showing support for the award. This supports approval of the service award sought here. *Flores v. Mamma Lombardi's of Holbrook, Inc.*, 104 F. Supp. 3d 290, 298 (E.D.N.Y. 2015) (approving $10,000 service award and noting that "not one class member objected to the service award").

In light of these considerations, the service award here is fair, reasonable, and warranted.

### D.   Attorneys' Fees

#### 1.   The Percentage Method is the Preferred Method for Awarding Attorneys' Fees in Common Fund Cases in this Circuit

When a common fund is created as part of a settlement, the Second Circuit has recently reaffirmed that "the percentage method has the advantage of aligning the interests of plaintiffs and their attorneys more fully by allowing the latter to share in both the upside and downside risk of litigation." *See Fresno Cnty. Employees' Ret. Ass'n v. Isaacson/Weaver Family Trust*, 925 F.3d 63, 71 (2d Cir. 2019) (citation omitted); *Thornhill v. CVS Pharmacy, Inc.*, 2014 WL 1100135, at *3 (S.D.N.Y. Mar. 20, 2014) (Furman, *J.*) (collecting cases setting attorneys' fees at one-third of the settlement).

However, to assess the reasonableness of a requested fee, courts usually "[a]pply[] the lodestar method as a cross check." *See Fresno Cnty. Employees' Ret. Ass'n*, 925 F.3d at 72 (citing *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 50 (2d Cir. 2000)) ("district courts should use the lodestar as a 'baseline' against which to cross-check a percentage fee").  Notably, "[a]lthough the Court has discretion to award attorneys' fees based on the lodestar method or percentage-of-recovery method, in wage and hour class action lawsuits, public policy favors a common fund attorneys' fee award." *Azogue*, 2016 WL 4411422, at *6 (citation omitted).

> ##### a.   *The Second Circuit Recently Found Percentage of the Gross Settlement Fund, Rather than Percentage of Fund Net Expenses to be Fair and Reasonable*

In *Kornell v. Haverhill Retirement Sys.*, 18-cv-3673 (2d Cir. Nov. 1, 2019), the Second Circuit, in a summary order, weighed the issue of calculating attorneys' fees in a class action settlement.  Specifically, the court considered whether such fees should be calculated based off a percentage of the gross settlement fund, or based off the settlement fund net of expense, and determined that the district court did not abuse its discretion by awarding class counsel a

percentage based upon the gross settlement fund. *Id.* Noting that the touchstone in an attorneys' fee award was reasonableness, the court held that because Federal Rule of Civil Procedure 23(h) does not bar one method or the other, "[a] district court has discretion to award Class Counsel a percentage of the gross class action settlement fund, provided that its award of attorneys' fees is reasonable." *Id.* (citing *Powers v. Eichen*, 229 F.3d 1249, 1258 (9th Cir. 2000); *Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 437 (2d Cir. 2007)) (explaining that a district court can avoid a "windfall" by adjusting 'the percentage awarded in order to come up with a fee it deems reasonable in light of the *Goldberger* factors").

Notably, in *Alaska Electrical Pension Fund v. Bank of America Corp.*, 2018 WL 6250657, at *1 (S.D.N.Y. Nov. 29, 2018), this Court determined the appropriate attorneys' fees in light of a fee application made in a complex antitrust class action. The Court ultimately determined that the $504.5 million gross settlement fund should be subtracted by the requested expenses of $18,429,687.63 before multiplying by twenty-six percent to determine the attorneys' fees. *See id.* at *3. The Court found that this net percentage of the fund produced a 1.41 lodestar multiplier and determined that this amount would not result in a windfall for the attorneys in that case, explaining that "the sheer size" of the settlement funds in some cases will favor fees awarded "in the lower range of what is reasonable because economies of scale could cause windfalls." *Id.* (internal quotations and citations omitted).

Moreover, the Second Circuit recently clarified that "[w]hile in some cases the proportion of fees may be relevant in considering the reasonableness of an award (for example, the multi-million dollar securities class action involving a common fund, often cited by district courts in evaluating fee requests, *see Goldberger*, 209 F.3d at 50-51), there is no explicit limit on attorneys' fees in FLSA actions and district courts should not, in effect and practice, implement such a limit."

*Fisher*, 18-cv-2504, Dkt. No. 65-1, p. 19. Here, because the requested fee of one-third of the gross settlement fund does not result in a windfall to Class Counsel, and in fact represents one-half of Class Counsel's lodestar, and additionally because the Second Circuit has approved of this method of calculation in situations where the *Goldberger* factors support plaintiffs' counsel's requested fee award, as they do here as discussed *infra*, Plaintiffs believe that one-third of the gross settlement fund is reasonable in this matter.

    b.  *The Goldberger Factors Support an Award of One-Third of the Gross Fund Created*

  "Reasonableness is the touchstone for determining attorneys' fees." *Asare v. Change Grp. Of N.Y., Inc.*, 2013 WL 6144764, at *18 (S.D.N.Y. Nov. 18, 2013). It is well-established law that "[t]o determine whether a fee is reasonable, courts look to the factors identified by the Second Circuit in *Goldberger*." *Siddiky v. Union Square Hospitality Grp., LLC*, 2017 WL 2198158, at *9 (S.D.N.Y. May 17, 2017) (citing *Goldberger*, 209 F.3d at 50). Those factors are: (1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations. *Id.* at 50. "Once that initial computation has been made, the district court may, in its discretion, increase the lodestar by applying a multiplier based on other less objective factors, such as the risk of the litigation and the performance of the attorneys." *Pucciarelli v. Lakeview Cars, Inc.*, 2017 WL 2778029, at *2 (E.D.N.Y. June 26, 2017) (citation omitted).

  In the present case, all of the *Goldberger* factors weigh in favor of awarding Plaintiffs' counsel their requested fees of one-third of the gross settlement fund.

Class Counsel, Borrelli & Associates, P.L.L.C. ("B&A") and Keegan & Baker, LLP ("K&B," and together with B&A as "the Firms"), spent significant effort to obtain the $250,000.00 settlement fund.  As the Court is aware, Plaintiffs opposed a motion to strike Plaintiffs' Rule 23 class action claims, as well as cross-moved for conditional certification of a collective action initially limited to four states and Washington, D.C.  After the parties engaged in discovery and failed to resolve the case following a first mediation in California, Plaintiffs moved a second time for conditional certification, this time on a nation-wide basis, after Defendant did not agree to stipulate to the motion, only to review it and then decide not to oppose it.  The parties then engaged in paper discovery for the entire collective, at that point consisting of 129 total plaintiffs in various states.  Prior to depositions that would have taken substantial time and cost to complete around the country, the Parties recognized the benefit of a second mediation, this time based upon a finite universe of CRAs that enabled both Plaintiffs and Defendant to calculate the damages with reasonable certainty.  As the Court is also aware, in addition to the motions and substantial work securing paperwork for the 129 FLSA Plaintiffs, there were various motions concerning discovery and late opt-ins as well as the finalizing of the class settlement agreement between the Parties and the Preliminary and Final approval motions. *See* Dkt. Nos. 111, 200, 250.

In performing the above tasks, B&A expended approximately 669.5 hours, including billable and nonbillable hours, of attorney and paralegal time as of February 11, 2020, which were recorded by contemporaneously maintained time records, and which produces an aggregate lodestar of $160,440.25.[2]  Additionally, K&B expended approximately 142.55 hours of attorney

---

[2] The requested attorney rates used for this calculation are explained below and in the Maguire Decl., ¶¶ 29, 35, 41, 45, 47.

and paralegal time as of October 21, 2019, which were recorded by contemporaneously maintained time records, and which produces an aggregate lodestar of $56,420.00. Therefore, the Firms' combined lodestar is $216,860.25. Moreover, the requested fee is not based solely on time and effort already expended, it is also meant to compensate the Firms for time that they will be required to spend administering the settlement in the future. *See Beckman*, 293 F.R.D. at 481 (noting that "[i]n wage and hour cases, Class Counsel is often called upon to perform work after the final approval hearing, including answering class member questions, answering questions from the claims administrator, and negotiating and sometimes litigating disagreements with defendants about administering the settlement and distributing the fund." For example, the Firms will need to oversee and monitor the payment to the Class Members by the Claim's Administrator, deal with any issues of late payment, and potentially respond to inquiries from the Class Members or the administrator. Thus, the Firm's lodestar will only increase.

### ii. *The Magnitude and Complexities of the Litigation*

"In evaluating the second *Goldberger* factor, '[t]he size and difficulty of the issues in a case are significant factors to be considered . . .'" *Hall*, 2016 WL 1555128, at *15 (quoting *Sukhnandan*, 2014 WL 3778173, at *10). "To that end, among FLSA cases, the most complex type is the hybrid action brought here, where state wage and hour violations are brought as an opt out class pursuant to Rule 23 in the same action as the FLSA opt in collective action pursuant to 29 U.S.C. § 216(b)." *Id.* (internal quotations omitted).

In *Bijoux v. Amerigroup New York, LLC*, 2016 WL 2839797, at *1 (E.D.N.Y. May 12, 2016), the court awarded one-third of the total gross settlement fund in attorneys' fees, "justified by the work that Class Counsel did negotiating the settlement and conducting the litigation, the ultimate recovery, and the risk that Class Counsel undertook in bringing the claims." In the present action, the Firms pursued nation-wide FLSA collective action and NYLL Rule 23 class action

claims on behalf of 171 people, with the additional wrinkle of the HCE exemption's potential applicability to some but not all of the Class Members, securing a $250,000.00 settlement fund, to which there were no objections, and only one request for exclusion. The Firms seek one-third of the gross fund. This factor supports the Firms' requested fee.

### iii. The Risk of Litigation

Also previously discussed in connection with approving the settlement, the risk of litigation, taking into account the settlement result, warrants the Firms' requested fee award. Indeed, "[d]espite the most vigorous and competent of efforts, success is never guaranteed." *Grinnell*, 495 F.2d at 471. The Firm reached a favorable settlement on the Class Members' behalf, without necessitating "full-blown" discovery, while still more than adequately investigating and analyzing substantial documents, producing a certain and immediate recovery. *Siddiky*, 2017 WL 2198158, at *4. Additionally, the Firms "risked time and effort and advanced costs and expenses, with no ultimate guarantee of compensation." *Kochilas*, 2015 WL 5821631, at *9.

Here, Class Counsel should be rewarded for securing this settlement despite the risks assumed, as the Firms undertook the matter on a contingency basis, *see* Maguire Decl., ¶ 27, and achieved a settlement following motion practice, discovery, and a thorough damage analysis conducted by a professional service. Based on the reasonableness of the award in light of the significant risk, the Firms achieved an excellent result. This third *Goldberger* factor weighs in favor of the Firms' requested fee award.

### iv. The Quality of the Representation

"To determine the quality of the representation, courts review, among other things, the recovery obtained and the backgrounds of the lawyers involved in the lawsuit." *Hall*, 2016 WL 1555128, at *15; *see Bijoux*, 2016 WL 2839797, at *1 (awarding one-third of the gross fund in attorneys' fees and noting that class counsel was "experienced class action employment lawyers

with good reputations among the employment law bar"). "The quality of representation is best measured by results." *Goldberger*, 209 F.3d at 55.

In the present case, "Class Counsel's skill and experience was directly responsible for this favorable settlement reached in an efficient manner without great Court intervention at an early stage of the litigation." *Asare*, 2013 WL 6144764, at *21. Indeed, based on the results achieved and the Class Members' favorable reaction, it is clear that the "diligent work performed by Class Counsel in litigating and settling this matter demonstrates their commitment to the Class Members and their interests." *Id.*

B&A has been appointed Class Counsel in several other similar matters based upon their experience "prosecut[ing] over one thousand cases in state and federal court, the large majority of which are employment actions." *Vivaldo v. United Talmudical Acad. of Kiryas Joel, Inc., et al*, 2015 WL 4922961, at *5 (S.D.N.Y. June 18, 2015), *report and recommendation adopted,* 2015 WL 10793126 (S.D.N.Y. Sept. 17, 2015). Plaintiffs provide the recent cases that courts have appointed B&A as class counsel in the Maguire Declaration, ¶ 20. This factor clearly weighs in favor of the Firms' requested fee award.

*v.* <u>The Requested Fee in Relation to the Settlement</u>

The Second Circuit recently held in *Fisher*, that "[n]either the text nor the purpose of the FLSA . . . supports imposing a proportionality limit on recoverable attorneys' fees." 18-cv-2504, Dkt. No. 65-1 (finding that "[b]y implementing a percentage cap on attorneys' fees in FLSA actions, district courts impede Congress's goals by discouraging plaintiffs' attorneys from taking 'run of the mill' FLSA cases where the potential damages are low and the risk of protracted litigation high"). Nonetheless, should this Court still conduct that analysis, courts do so to ensure that the percentage awarded does not constitute a "windfall." *Asare*, 2013 WL 6144764, at *21. Under the Settlement Agreement here, the Parties agreed that, subject to Court approval, Class

Counsel would receive $83,333.00 as attorneys' fees, representing one-third of the total gross Settlement Fund. This is consistent with what courts have approved in other wage and hour hybrid class and collective cases within the Second Circuit, all of which are pre-*Fisher*. *See Bijoux*, 2016 WL 2839797, at *1. Pre-*Fisher*, Class Counsel's requested one-third is arguably the standard in this Circuit for a non-claims made settlement. *See e.g.*, *Kochilas*, 2015 WL 5821631, at *8 (awarding one-third of the settlement fund as "consistent with the norms of class litigation in this circuit"); *Lizondro-II*, 2015 WL 4006896, at *10 (awarding one-third fees based on $315,000 settlement with informal discovery). Thus, the requested fee of one-third of the total fund is reasonable in relation to the settlement.

### vi. *Public Policy Considerations*

"Fee awards in wage and hour cases are meant to encourage members of the bar to provide legal services to those whose wage claims might otherwise be too small to justify the retention of able, legal counsel." *Beckman*, 293 F.R.D. at 477 (internal quotations omitted). "Where relatively small claims can only be prosecuted through aggregate litigation, 'private attorneys general' play an important role." *Kochilas*, 2015 WL 58216, at *8 (internal quotations omitted). "Adequate compensation for attorneys who protect wage and hour rights furthers the remedial purposes of the FLSA and the NYLL." *Id.* (collecting cases).

In the present matter, Class Counsel agreed to assume the risk of time, effort, and advanced costs "with no ultimate guarantee of compensation" by representing the Plaintiffs on a full contingency basis. *See* Maguire Decl., ¶ 27 and Keegan Decl., ¶¶ 9-16. The favorable reaction by the Class Members confirms their satisfaction with Class Counsel's result, as the amount of requested attorneys' fees were provided in the Notices, informing the Class Members of the requested fees and their ability to exclude themselves or for the Rule 23 Plaintiffs to object to the settlement if they disagreed or otherwise chose not to participate. *See Azogue*, 2016 WL 4411422,

at *7 ("No Class Member objected to the Class Counsel's request for 33.33% of the Fund, which also provides support for Class Counsel's fee request."); *Hall*, 2016 WL 1555128, at *15 (collecting cases).

Based on the foregoing, all of the *Goldberger* factors weigh in favor of the requested fee award.

### 2. The Lodestar Cross-Check Further Supports an Award of One-Third of the Settlement Fund

#### a. *The Lodestar Multiplier is Within a Reasonable Range*

"Courts have routinely found that doubling the lodestar yields a reasonable fee in the context of FLSA settlements." *Pucciarelli*, 2017 WL 2778029, at *2 (collecting cases); *see Hall*, 2016 WL 1555128, at *15 (citation omitted) (finding a multiplier "near 2" is generally held to compensate class counsel appropriately). Here, a lodestar cross-check confirms that the Firms' requested attorneys' fees are much less than their lodestar, negating the need to request a multiplier. *See* Maguire Decl., ¶ 18.

#### b. *The Firm's Requested Rates are Fair and Reasonable*

Courts in this District have determined in recent cases that an hourly fee ranging from $250.00 to $450.00 is appropriate for experienced litigators in wage-and-hour cases." *Lizondro-II*, 2015 WL 4006896, at *7 (collecting cases). With regard to how Class Counsel calculated their lodestar, the rates and experiences of the employees who worked on this matter are described in the Maguire Decl., ¶¶ 17-49. Courts in this District and the Eastern District of New York have routinely approved these rates in contested wage and hour cases such as this one. *See, e.g. Perez v. Merrick Deli & Grocery, Inc. et al.*, 13-cv-5166-ILG-JO, Dkt. No. 60 (E.D.N.Y. Apr. 4, 2019) (on a contested attorneys' fees motion filed after trial in a wage and hour case, awarding Borrelli & Associates, P.L.L.C. attorneys' fees at the rates that they request here, and recognizing that that

"this Court and the neighboring Southern District of New York have routinely approved these billing rates for Borrelli & Associates"); *see also Copper v. Cavalry Staffing, LLC et al.*, No. 14-cv-3676, Dkt. No. 255 (E.D.N.Y. Feb. 12, 2018) (approving rates of $400.00 per hour for Michael J. Borrelli, $350.00 per hour for Alexander T. Coleman, $295.00 per hour for Jeffrey R. Maguire, and $90.00 per hour for the Firm's paralegals); *Vivaldo v. United Talmudical Academy of Kiryas Joel, Inc.*, 14-cv-2636-GWG, Dkt. No. 128 (S.D.N.Y. Feb. 9, 2018) (approving rates of $400.00 per hour for Michael J. Borrelli, $350.00 per hour for Alexander T. Coleman, $295.00 per hour for Jeffrey R. Maguire, and $90.00 per hour for the Firm's paralegals).

Additionally, the party seeking a fee award "has the burden of showing by satisfactory evidence – in addition to the attorney's own affidavits – that the requested hourly rates are the prevailing market rates." *Sandoval v. Materia, Bros., Inc.*, 2013 WL 1767748, at *4 (S.D.N.Y. Mar. 5, 2013), *report and recommendation adopted*, 2013 WL 1759581 (S.D.N.Y. Apr. 24, 2013). Class Counsel meets its burden by providing affidavits from other attorneys practicing employment law in the area attesting to the reasonable of the herein requested rates. *See* Maguire Decl., ¶ 48, **Exhibit D,** and the 2013 National Law Journal Billing Survey of billing rates of the largest U.S. law firms attached to the Keegan Decl., ¶¶ 23-24, **Exhibit 2**.

Based upon these rates, $83,333.00 in attorneys' fees is much less than the lodestar in this matter. *See*, Keegan Decl., ¶ 21. Class Counsel's contemporaneous billing records are annexed to the Maguire Decl., ¶ 18, **Exhibit B** and the Keegan Decl., ¶¶ 18-21, **Exhibit 1**. For the foregoing reasons, Class Counsel's request for $83,333.00, or one-third of the settlement fund, is reasonable.

### E.     Litigation Expenses

Counsel should be awarded expenses that are "necessary and were directly related to the results achieved." *Siddiky*, 2017 WL 2198158, at *12 (citation omitted). Class Counsel's costs

and disbursements are $17,253.86 for the Firms. *See* Maguire Decl., ¶ 19. This includes costs for the filing fee, service, mailing of the first round of collective action notices, the first mediation, including travel expenses to California, mailing of the second round of collective action notices, local travel, professional damage calculations that Employment Research Corporation performed, the second mediation, Westlaw research, postage, and PACER fees. *See id*. Plaintiffs attach a copy of their Litigation Expenses to the Maguire Decl. as **Exhibit C**.[3]

### F. Claims Administrator's Fees and Costs

Arden requests reimbursement for its fees and future costs in the amount of $20,000.00. *See* Ferrante Aff., ¶ 14. This is far less than what courts have approved for claims administration costs in similar cases. *Id*. (approving claims administration fess of $33,500.00 and noting that "[c]ourts within this district have awarded up to $50,000.00 for the settlement claims administrator"). More information on Arden is supplied in the Ferrante Affidavit.

## IV. CONCLUSION

Plaintiffs have attached a Proposed Order as **Exhibit E** to the Maguire Declaration. For the reasons stated herein, respectfully, this Court should grant final approval of the settlement, authorize the distribution of settlement checks to all Class Members who did not submit a request for exclusion, representing their share of the Settlement Fund, approve the requested service awards, attorneys' fees, and expenses, dismiss the case with prejudice, and enter a Final Order. Lastly, the Court should retain exclusive jurisdiction over the construction, interpretation, implementation, and enforcement of the Parties' Settlement and distribution of the settlement

---

[3] All of these costs were necessarily incurred in the course of this litigation, and are the types of unreimbursed costs incurred have been previously approved by this Court and other courts in settlements of other FLSA and NYLL employment class action cases. *See, e.g., Febus v. Guardian First Funding Grp., LLC*, 870 F. Supp. 2d 337, 341 (S.D.N.Y. 2012).

funds.

Dated: New York, New York
       February 11, 2020

Respectfully submitted,

_____
Jeffrey R. Maguire (JM1982)
Alexander T. Coleman (AC1717)
Michael J. Borrelli (MB8533)
BORRELLI & ASSOCIATES, P.L.L.C.
*Attorneys for Plaintiffs*
655 Third Avenue, Suite 1821
New York, New York 10017
Tel. (212) 679-5000

_____
Patrick Keegan, Esq.
KEEGAN & BAKER, LLP
*Attorneys for Plaintiffs*
2292 Faraday Avenue, Suite 100
Carlsbad, California 92009
Tel. (760) 929-9303